**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HENRY CAMPBELL, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )   1:16-cv-08719-AJN |
| | ) |
| CITY OF NEW YORK, NEW YORK, | )   (JURY TRIAL DEMANDED) |
| | ) |
|    Defendant. | ) |
| _____ | ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR CONDITIONAL CERTIFICATION AND NOTICE TO PUTATIVE PLAINTIFFS**

Respectfully submitted,

Gregory K. McGillivary
David Ricksecker
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@wmlaborlaw.com
dr@wmlaborlaw.com

Hope Pordy
SPIVAK LIPTON LLP
1700 Broadway
Suite 2100
New York, N.Y 10019
Phone: (212) 765-2100
hpordy@spivaklipton.com

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 1

   A.   Plaintiffs Perform Similar Work Across all DHS Facilities ................................ 2

   B.   Plaintiffs Work Over 40 Hours Per Week ........................................................... 3

   C.   Miscalculation of Employees' Regular Rate ....................................................... 4

   D.   Failure to Pay Compensatory Time at Time-and-One-Half Rate ......................... 4

   E.   Uncompensated Pre-Shift,  Post-Shift, and Meal Period Work............................ 5

   F.   Late Payment of Overtime .................................................................................. 6

III.  ARGUMENT ....................................................................................................... 6

   A.   The FLSA Provides for Collective Actions ........................................................ 6

   B.   The Burden On Plaintiffs is Minimal to Establish that Court Supervised Notice is
        Appropriate in FLSA Collective Actions............................................................ 8

   C.   Plaintiffs Have Easily Met Their Burden to Show They are Similarly Situated by Showing
        that the City of New York's Practices and Policies Violate the FLSA and Affect All
        Prospective Plaintiffs ....................................................................................... 10

      1.  Plaintiffs Have Demonstrated a Similar Factual Setting With Respect to Pay Practices
          and Job Requirements for The Entire Class.................................................... 10

      2.  Plaintiffs Have Raised the Same Legal Issues for the Entire Class................... 13

         a.   *Regular Rate* ....................................................................................... 13

         b.   *Compensatory Time Paid at a Straight Time Rate* .................................... 14

         c.   *Uncompensated Work*............................................................................. 14

         d.   *Late Payment of Overtime* ..................................................................... 16

IV.   PLAINTIFFS' PROPOSED NOTICE ............................................................... 17

V.    CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

**Statutes**

29 U.S.C. § 203 ............................................................................................................... 15

29 U.S.C. § 207 ........................................................................................................ passim

29 U.S.C. § 216 ............................................................................................ 1, 6, 7, 8, 10

29 U.S.C. § 255(a) ............................................................................................................ 1

**Regulations**

29 C.F.R. § 553.22 .......................................................................................................... 14

29 C.F.R. § 778.106 ........................................................................................................ 16

29 C.F.R. § 778.108 ........................................................................................................ 13

29 C.F.R. § 778.207 ........................................................................................................ 14

**Supreme Court Cases**

*Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388 (1960) ..................................................... 13

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945) ...................... 13

*Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989). ...................................... 7, 8, 9

**Circuit Court Cases**

*Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130 (3d Cir. 1999) ................................... 16

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008) ........................................ 15

*Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996) ............................................ 11

*Holzapfel v. Town of Newburgh*, 145 F.3d 516 (2d Cir. 1998) ..................................... 15

*Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) .......................................... 9

*Rogers v. City of Troy*, 148 F.3d 52 (2d Cir. 1998) ...................................................... 16

**District Court Cases**

*Ahmed v. T.J. Maxx Corp.*, 2012 U.S. Dist. LEXIS 162825 (E.D.N.Y. Nov. 14, 2012) ............................ 18

*Apolinar v. R.J. 49 Rest., LLC*, 2016 U.S. Dist. LEXIS 65733 (S.D.N.Y. May 18, 2016)...................... 6, 9

*Ayers v. SGS Control Servs.*, 2007 U.S. Dist. LEXIS 19634 (S.D.N.Y. Feb. 26, 2007)………………...…11

*Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)………………………………………9

*Cheng Chung Liang v. J.C. Broadway Rest., Inc*., 2013 U.S. Dist. LEXIS 73976 (S.D.N.Y. May 23, 2013) ....................................................................................................................................11

*Delaney v. Geisha NYC*, LLC, 261 F.R.D. 55 (S.D.N.Y. 2009)………………………………….…17

*Dumitrescu v. Mr. Chow Enters.*, 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008)….....................9

*Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317 (S.D.N.Y. 2007). ...........................................17

*Harhash v. Infinity West Shoes, Inc.*, 2011 U.S. Dist. LEXIS 96880 (S.D.N.Y. Aug. 24, 2011) .............. 11

*Hernandez v. Merrill Lynch & Co.*, 2012 U.S. Dist. LEXIS 49822 (S.D.N.Y. Apr. 6, 2012)………...17, 18

*Jacobs v. Duane Reade, Inc*., No. 11 Civ. 0160, 2012 U.S. Dist. LEXIS 11053, 2012 WL 260230 (S.D.N.Y. Jan. 27, 2012)........................................................................................................17

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006); ...........................................................7, 9

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007); ................................................9

*Mark v. Gawker Media LLC*, 2014 U.S. Dist. LEXIS 114011 (S.D.N.Y. Aug. 15, 2014) (Nathan, J.) . 6, 17

*Martin v. Sprint/United Mgmt. Co.*, 2016 U.S. Dist. LEXIS 352 (S.D.N.Y. Jan. 4, 2016). ......................18

*Michael v. Bloomberg L.P.*, 2015 U.S. Dist. LEXIS 51030 (S.D.N.Y. Apr. 17, 2015)..............................18

*Pippins v. KPMG LLP*, 2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012);....................................17, 18

*Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998); ..................................................6, 8

*Varghese v. JP Morgan Chase & Co*., 2016 U.S. Dist. LEXIS 122428 (S.D.N.Y. Sep. 8, 2016)............. 17

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) ...................................................................10

*Scott v. City of N.Y.*, 592 F. Supp. 2d 475 (S.D.N.Y. 2008)…..………………………………………16

*Stevens v. HMSHost Corp.*, 2012 U.S. Dist. LEXIS 190689 (E.D.N.Y. June 15, 2012)…………………11

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445 (S.D.N.Y. 2011).....................................8

*Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012)..............................................................6

## I.  INTRODUCTION

Plaintiffs at all relevant times are or were employed by the City of New York's Department of Homeless Services ("DHS") in the position of Peace Officer and/or Sergeant, and they bring this action under the Fair Labor Standards Act (FLSA) on behalf of themselves and all others similarly situated to remedy violations of the overtime requirements of Section 7(a) of the FLSA. 29 U.S.C. § 207 (a). Plaintiffs respectfully request that this matter proceed as a collective action pursuant to 29 U.S.C. § 216 (b). Additionally, plaintiffs request that this Court order defendant to produce the names and contact information of prospective class members so that notice may be sent to apprise these individuals of the pendency of this action as soon as possible; otherwise, their claims may be time-barred.[1] Specifically, plaintiffs request that they be permitted to provide notice through U.S. first class mail and by email to all FLSA non-exempt current and former employees of the defendant who have been employed at any time since November 9, 2013 at the City of New York's Department of Homeless Services in the following positions: Peace Officer and Sergeant.[2]

## II.  STATEMENT OF FACTS

On November 9, 2016, plaintiffs filed this action arising out of their employment at DHS with the City of New York. Docket Entry ("DE") 1. There are 5 representative plaintiffs and 234 opt-in plaintiffs. DE 1, 9, 10, 11, 12. Although the law requires only a modest factual showing for this case to be conditionally certified as a collective action, plaintiffs present below detailed facts that support their motion. These facts show that the defendant has failed to comply with the

---

[1]    The statute of limitations in FLSA actions is two years which is extended to three years for willful violations. 29 U.S.C. § 255(a).

[2]    Plaintiffs' proposed notice is attached as Exhibit A.

overtime requirements of Section 7, 29 U.S.C. § 207, of the FLSA in one or more of the

following ways:

> (1) Failing to compensate plaintiffs for the work performed in excess of 40 hours per week at the rate of one and one-half times the plaintiffs' regular rates of pay by failing to properly calculate the "regular rate" at which overtime is paid by excluding night shift differential pay from this calculation;

> (2) Paying plaintiffs in compensatory time at a straight time hour-for-hour rate rather than at the rate of one and one-half hours for each overtime hour worked in excess of 40 hours per week;

> (3) Failing to pay plaintiffs for all hours worked by failing to compensate plaintiffs for work performed before and/or after their official shifts, and by automatically deducting one hour for meal periods although work was performed such that either no meal period or a much shorter meal period was taken; and

> (4) Paying plaintiffs weeks or even months after the plaintiffs have performed overtime work in excess of 40 hours per week in violation of the FLSA's prompt payment requirement. DE 1.

As plaintiffs demonstrate below, all plaintiffs and putative plaintiffs are subject to the

same policies and practices that deprive them of their proper and timely overtime pay under the

FLSA.

### A. Plaintiffs Perform Similar Work Across all DHS Facilities

Upon information and belief, there are approximately 812[3] individuals employed by DHS

in the positions of Peace Officer and Sergeant, the exact number of which will be determined

when Defendant provides plaintiffs with the names and contact information for all potential opt-

in plaintiffs. All of the employees within these job titles have as their primary purpose serving

the homeless population of the City of New York. Ex. B-1, 7, 13, 19, 25.[4] The employees who

work in these job titles are all subject to the same pay policies and practices promulgated by the

---

[3]       *Payrolls,* EMPIRE CENTER, http://seethroughny.net/payrolls (last visited Nov. 22, 2016).
[4]       Sworn declarations of plaintiffs from each job category are attached hereto as Exhibit B.

City. *See generally* Ex. B. In addition, plaintiffs are similarly situated to other plaintiffs at DHS with the same job titles. B-1–2, 7–8, 13–14, 19–20, 25–26.

Plaintiffs employed as Peace Officers perform job duties such as: guarding DHS personnel and property as assigned; investigating suspicious conditions and circumstances; giving attention to hazardous conditions; maintaining an activity log; maintaining records and submitting written reports; patrolling DHS facilities; taking necessary action to maintain order and prevent theft and destruction; and making arrests on DHS premises. DE 1; Ex. B-1, 7, 19, 25.

Plaintiffs employed as Sergeants perform job duties such as: responding to incidents involving arrests or other emergencies; inspecting uniforms and equipment; conducting investigations and submitting reports on injuries to staff members or damage to DHS property; maintaining an activity log; patrolling facilities; keeping desk officers notified of current matters of importance; preparing and maintaining bulletin boards and assuring notifications are current and authorized; and distributing DHS directives as required. DE 1; Ex. B-13.

### B. Plaintiffs Work Over 40 Hours Per Week

Plaintiffs are employed at DHS in the positions of Peace Officer and Sergeant. Peace Officers and Sergeants at DHS are scheduled to work 5 shifts a week. Each shift is 8 ½ hours in length consisting of 8 paid hours and a half-hour unpaid meal period.  Thus, any uncompensated work performed outside their regularly scheduled shifts and during their meal periods is work time in excess of 40 hours a week.

Plaintiffs perform work in excess of 40 hours per week approximately 3 out of every 4 weeks, because they perform their job duties before and/or after their assigned shift, and during their unpaid meal periods. Ex. B-2–3, 8–9, 14–15, 20–21, 26–27; *see also* Ex. B-3, 9–10, 16, 21, 28 (examples of plaintiffs' overtime work). Thus, in at least thirty weeks per calendar year,

plaintiffs have worked more than 40 hours and were deprived of overtime compensation and/or were improperly compensated for the overtime hours that they worked during those weeks in violation of the FLSA, as described below.

### C.  Miscalculation of Employees' Regular Rates of Pay

Employees of DHS are eligible to receive, *inter alia*, supplemental payment for hours worked in the evening, which amounts to 10% of the employees' basic rate of pay (i.e., a night shift differential). Ex. B-5, 11, 17, 23, 29. These additional payments are not included in the employees' regular rates of pay when calculating their overtime. *Id*. All Peace Officers and Sergeants of DHS are subject to the same pay policies, with night shift differential being excluded from the employees' regular rate of pay for purposes of calculating overtime. *Id.*

### D.  Failure to Pay Compensatory Time at Time-and-One-Half Rate

Employees earn compensatory time for overtime worked in various ways. For example, but not limited to this example, when an employee has been paid for approved overtime work, and the total amount of cash overtime pay received in a calendar year by the employee equals at least 10% of that employee's salary, the City will compensate ***all*** future overtime work with compensatory time and not cash overtime. Ex. B-4, 10, 16, 22, 29. This compensatory time is paid at a rate of one hour of compensatory time for each hour of approved overtime work. *Id.*

The City has a policy and practice applicable to all DHS employees, including but not limited to Peace Officers and Sergeants, by which it pays ***all*** compensatory time at straight time, and never at the rate of one and one-half hours for each overtime hour worked even though employees have worked over 40 hours each week. *Id.* This policy applies to compensatory time earned as a result of the 10% cap described above, and at any other time when the City compensates plaintiffs for overtime work with compensatory time in lieu of cash.

### E.  Uncompensated Pre-Shift, Post-Shift, and Meal Period Work

Peace Officers and Sergeants employed at DHS routinely report to their work station early and/or stay late to perform work activities. Ex B-2, 8, 14, 20, 26. Although employees are scheduled for an 8 ½ hour shift, including an unpaid half-hour meal period, plaintiffs are routinely permitted and/or suffered to work before and after their shifts because they are required to arrive before the official start of their shifts to change into their uniform and because they are prohibited from abandoning their posts at the end of their shift until they are properly relieved. *Id*. As noted above, since the Peace Officers and Sergeants are scheduled to work 40 hours per week, any uncompensated time that they work outside their regularly scheduled hours, and during their meal periods, is in excess of 40 hours a week.

Sergeants are scheduled to receive one uncompensated half-hour meal period daily. Ex B-14. This half-hour meal period is uncompensated regardless of whether the employees receive a full, duty-free meal period. *Id.* Sergeants work during their meal periods approximately 4 to 5 times per week, because they continue performing work as they are the only Sergeants on duty and therefore are prohibited from leaving their posts. *Id*.

Certain DHS facilities do not have, or at certain times within the last 3 years, have not had, timekeeping devices on-site. Sergeants and Peace Officers who are assigned to DHS facilities without such timekeeping devices do not have the ability to input their time at their assigned work location and must travel to DHS facility, Prevention Assistance and Temporary Housing Center ("PATH"), located at 151 East 151st Street, Bronx, NY, once every week to input their hours. For some, the total trip can take 1.5 to 2 hours to travel from their work locations, located throughout the five boroughs of the City of New York, to the PATH facility. When Sergeants and Peace Officers perform these work activities, it causes them to work in excess of 40 hours per week, for which they are not compensated. Ex B-28.

Peace Officers and Sergeants are all subject to the same practices and policies that require employees to perform uncompensated pre-shift, post-shift, and/or meal period work. Ex B-2–4, 8–10, 14–16, 19–22, 26–28.

### F.  Late Payment of Overtime

When paying overtime in cash for hours worked in excess of 40 in a workweek, the defendant often delays the payment of this overtime beyond the next pay period after which the overtime is worked, delaying overtime payments to employees for weeks and sometimes months. Ex B-5, 11, 17, 23, 29. This delay in overtime payment is due to defendant's policies and practices of compelling managers to complete paperwork before overtime is paid, and the managers sometimes delay submitting the paperwork the City requires before paying overtime. *Id.*

## III.   ARGUMENT

### A.  The FLSA Provides for Collective Actions

Courts in this judicial district have long routinely issued notice to putative plaintiffs in FLSA actions and conditionally certified collective actions early in litigation to ensure that affected employees are provided with notice and an opportunity to join actions alleging FLSA overtime violations. *E.g.,Gaspar v. Pers. Touch Moving, Inc.,* 2014 U.S. Dist. LEXIS 129856 (S.D.N.Y. Sep. 15, 2014) (Nathan, J.); *Mark v. Gawker Media LLC*, 2014 U.S. Dist. LEXIS 114011 (S.D.N.Y. Aug. 15, 2014) (Nathan, J.); *Apolinar v. R.J. 49 Rest., LLC*, 2016 U.S. Dist. LEXIS 65733 (S.D.N.Y. May 18, 2016); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998). Section 216(b) of the FLSA, which governs the requirements for a collective action, states in pertinent part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, unlike class actions brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, where all affected individuals are bound by the suit unless they choose to opt-out, the FLSA mandates that putative class members "opt-in" as a prerequisite to obtaining relief under any pending suit. *Lee*, 236 F.R.D. at 196 ("Unlike class action suits brought pursuant to Fed. R. Civ. P. 23, only potential plaintiffs who 'opt in' may be bound by or benefit from the judgment in an FLSA collective action.") (citations removed).

The Supreme Court has held that trial courts have the authority to implement the collective suit provision of Section 216(b) by "facilitating notice to potential plaintiffs" to allow them to opt in to the lawsuit. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Furthermore, it is appropriate for trial courts to order the defendant to produce to plaintiff the names and addresses of putative class members at the early stages of the litigation. *Hoffman-LaRoche,* 493 U.S. at 170 (affirming the district court's decision to permit discovery of putative class members for notice purposes without exploring alternative basis for the discovery); *Lee*, 236 F.R.D. at 201 ("It is well settled that courts may authorize notice when the plaintiff, as here, has demonstrated that he and potential plaintiffs are similarly situated. . . . Courts in this District previously have authorized such notice in FLSA collective actions and overseen the notice process.").

Facilitating notice serves important goals such as avoiding a multiplicity of duplicative suits and setting deadlines to expedite disposition of the action. *Hoffman-LaRoche*, 493 U.S. at 172. As the Supreme Court has explained:

7

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [illegal] activity. These benefits, however depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate . . . . It follows, that once an [FLSA] action is filed the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.

*Hoffman-LaRoche*, at 170-71. Thus, notice to employees fulfills the broad remedial purposes of the FLSA by informing the employees of the opportunity to vindicate their rights to be paid for their work time and to be correctly paid overtime to which they are entitled under the Act. *Id*. at 172.

Promptly issuing court-supervised notice fulfills the purpose of notifying putative plaintiffs of the pendency of a case involving allegations of violations of their rights under the FLSA so that they can make an informed decision about whether to participate. *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) ("The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'")

## B. The Burden On Plaintiffs is Minimal to Establish that Court-Supervised Notice is Appropriate in FLSA Collective Actions

It is appropriate for courts to exercise their discretion to order notice where plaintiffs establish that they are similarly situated to the putative class and that together they were victims of a common plan, policy or practice that deprives them of their rights under the FLSA. 29 U.S.C. § 216(b); *Hoffman-LaRoche*, 493 U.S. at 169. "The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Realite*, 7 F. Supp. 2d at 306. Courts have

developed a two-phase inquiry, which the Second Circuit has adopted, to address the question of whether plaintiffs are "similarly situated." The first phase takes place at the beginning of discovery and the second occurs after all the opt-in forms have been received and discovery closes. *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) (approving of the two-step "conditional certification" method); *Apolinar*, 2016 U.S. Dist. LEXIS 65733 at *17 (applying the two step notice and certification approach).

The Second Circuit recognizes that at the first "notice" stage, "[p]laintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one." *Lee*, 236 F.R.D. at 197. Plaintiffs must show only that "their positions are 'similar, not identical,' to the positions held by the potential opt-in plaintiffs." *Dumitrescu*, 2008 U.S. Dist. LEXIS 49881 at *15 (citations omitted). Accordingly, while plaintiffs bear the burden of demonstrating that they are similarly situated to other potential opt-in plaintiffs, this burden is "light" at the notice stage. *Apolinar*, 2016 U.S. Dist. LEXIS, at *17; *see also Lynch*, 491 F. Supp. 2d at 368 (holding that the plaintiff's burden is "very low").

Plaintiffs must only make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (*citing Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). Plaintiffs in an FLSA case can make this showing by demonstrating that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Myers*, 624 F.3d at 555 (citation omitted). This Court recognizes that plaintiffs can meet this burden based on pleadings, affidavits, and other evidence that demonstrates allegations of class-wide illegal practices. *Gaspar*, 2014 U.S. Dist. LEXIS 129856 at *10-12; *see Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)

("'[N]othing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required.") (*quoting Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).

### C. Plaintiffs Have Easily Met Their Burden to Show They are Similarly Situated by Showing that the City of New York's Practices and Policies Violate the FLSA and Affect All Prospective Plaintiffs

Here, the representative plaintiffs[5] have easily met their burden to show that they are similarly situated to the putative class, and that the class was subjected to the same policies and practices at all the City of New York's DHS facilities, resulting in unpaid overtime work, the incorrect calculation of their regular rates of pay, improper payment of straight-time compensatory time, and a violation of the FLSA's requirement of prompt payment of overtime. Plaintiffs have detailed the circumstances under which the defendant's policies and practices result, on a uniform basis, in the forfeiture of compensation and late payment of compensation for time worked under the FLSA.

### 1. Plaintiffs Have Demonstrated a Similar Factual Setting With Respect to Pay Practices and Job Requirements for the Entire Class

Plaintiffs have submitted five declarations supporting the allegations in the Complaint. *See* Ex B. Each declarant has verified the City's pay practices that violate the FLSA; (1) when the City pays overtime to the Peace Officers and Sergeants, the City's routine failure to include night shift differential payments in the plaintiffs' regular rates of pay for purposes of the computation of their overtime pay; (2) when the City pays overtime to the Peace Officers and Sergeants, the City's failure to pay compensatory time at the rate of one and one-half hour of compensatory  for hours worked over 40 in a workweek and, instead paying the plaintiffs at the

---

[5]      The representative plaintiffs, as identified in the complaint and whose sworn affidavits are attached hereto as Exhibit B, are Henry Campbell, Jermaine Abraham, Edwin Rosario, Jessica Maniotis and Sheri Silver.

rate of one hour of compensatory time for each hour of overtime worked; (3) the City's failure to pay for pre-shift, post-shift, and meal-period work; and (4)when the City pays overtime to the Peace Officers and Sergeants, the City's routine late payment of overtime pay 30 days or more beyond the date that the plaintiff worked overtime. Under these policies and practices, plaintiffs and putative plaintiffs are routinely denied timely and proper overtime compensation in violation of the FLSA. It is well established that, for purposes of Section 216(b), "[p]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Ayers v. SGS Control Servs.*, 2007 U.S. Dist. LEXIS 19634, at *16 (S.D.N.Y. Feb. 26, 2007) (*quoting Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). Hence, through their declarations, plaintiffs have easily made the modest factual showing required under Section 216(b).

In addition, all plaintiffs and prospective plaintiffs, regardless of job title, are subject to the same pay practices and policies. *See generally,* Ex. B. Notably, "[c]ourts have found employees 'similarly situated' for purposes of the FLSA where they performed different job functions or worked at different locations, so long as they were subject to the same allegedly unlawful policy." *Harhash v. Infinity West Shoes, Inc.*, 2011 U.S. Dist. LEXIS 96880, at *9 (S.D.N.Y. Aug. 24, 2011); *see also Stevens v. HMSHost Corp.*, 2012 U.S. Dist. LEXIS 190689, at *21-22 (E.D.N.Y. June 15, 2012) (collecting cases). Such is the case here. All plaintiffs and putative plaintiffs are employees of DHS in the positions of Peace Officer and/or Sergeant. Defendant has a centralized pay system, and treats all plaintiffs identically with regard to its pay policies and practices. The mechanism through which all plaintiffs were deprived of their rights under the FLSA was the same for all plaintiffs and putative plaintiffs. *Cheng Chung Liang v. J.C. Broadway Rest., Inc*., 2013 U.S. Dist. LEXIS 73976, at *5 (S.D.N.Y. May 23, 2013) ("[F]or

employees to be similarly situated, it is not necessary that they have the same job responsibilities.").

Indeed, the City's systematic violations of the FLSA apply to all of the plaintiffs and share the characteristic of being indistinguishable for purposes of liability in their application to the plaintiffs. All of the plaintiffs are subject to the City's policy and practice of miscalculating the rate at which overtime is paid when it is paid in cash by failing to include night shift differential in the overtime rate; they are all subject to defendant's policy and practice of paying straight time compensatory time rather than compensatory time at the rate of one and one-half hours for each overtime hour worked; and they are all subject to the late payment of overtime, whether it is paid in cash or compensatory time, as a result of the City waiting weeks or months to compensate the employees. Each of these systemic violations is not unique, but is the same for all of the plaintiffs.

Proof regarding defendant's failure to pay employees for all hours worked is also similar for all plaintiffs. The plaintiffs all perform exactly the same type of activities when performing uncompensated pre-shift and post-shift work hours and these work hours are ***actually recorded*** in defendant's time-keeping system as "Uncompensated Hours" or "Noncompensable Hours." Plaintiffs must routinely perform their job duties outside their regular schedule, including before and after their shift, because they must prepare for roll call and change into their uniforms before their shift begins, and because they cannot leave their posts at the end of their shift unless they are properly relieved. Ex B-2, 8, 14, 20, 26. Because plaintiffs are all subject to the same pay policies and practices, they are similarly situated.  It is defendant's policy that an employee who performs work pre-shift, post-shift or during the unpaid meal period will not be compensated for it unless the work time has been pre-approved by a manager, and defendant will not pay for this

work time even if it is aware that the employee is performing the work. Ex. B-4, 10, 16, 22, 28. Each of the plaintiffs have been suffered or permitted to work before and after their shifts, without compensation, because defendant's policies provide that plaintiffs will be compensated for overtime only if it is pre-approved, regardless of whether defendant is aware that plaintiffs have worked overtime. *Id.*

### 2.   Plaintiffs Have Raised the Same Legal Issues for the Entire Class

#### a.   *Regular Rate*

Employers are required to pay employees covered by the FLSA one-and-one-half times the employee's "regular rate of pay" for all hours worked in a workweek in excess of 40 hours. 29 U.S.C. § 207(a). As the Supreme Court has stated, "[t]he keystone of Section 7(a) is the regular rate of compensation. On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). In short, the failure to include all types of compensation in the regular rate results in workers being shortchanged on their overtime pay.

The FLSA requires that an employer include all remuneration for employment in an employee's regular rate for the purpose of calculating overtime except for a few certain very narrow exceptions specifically set forth in the statute. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108. The statutory exclusions of payments allowed from the calculation of overtime pay are limited to items such as gifts, discretionary bonuses, pension contributions, and payments for certain periods where no work is performed. These exceptions are to be "narrowly construed against the employer asserting them" and their application is limited to payments "plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

In the present case, because night shift differential payments do not fall within the FLSA's specifically-enumerated exclusions, they must be included in plaintiffs' regular rates of pay for the calculation of overtime. Indeed, the Department of Labor regulations specifically explain that a night shift differential payment that is provided as an incentive to encourage employees to work during less desirable hours, as a type of payment that must be included in the regular rate at which employees are paid overtime. 29 C.F.R. § 778.207(b) (*"Nonovertime premiums.* The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour). . . .").

b. *Compensatory Time Paid at a Straight Time Rate*

Under the FLSA, public employers are permitted to provide compensatory time as overtime pay, but must pay this time at the rate of one and one-half hours of compensatory time for each overtime hour worked. 29 U.S.C. § 207(o)(1) ("Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate **not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section**.") (emphasis added). *See* 29 C.F.R. § 553.22(b). Defendant has violated the plain language of the statute by awarding plaintiffs compensatory time at a straight time rate when plaintiffs work over 40 hours in a week. All plaintiffs and putative plaintiffs are subject to this same policy and practice, which violates the FLSA.

c. *Uncompensated Work*

Defendant also has a common policy and practice under which plaintiffs work prior to their scheduled shift, after their scheduled shift has ended, and during their unpaid meal period,

without compensation. In addition, when the DHS facilities to which the plaintiffs are assigned do not have timekeeping capabilities, plaintiffs must travel to a different DHS facility (PATH) once per week to input their hours without compensation. Employers are required to pay employees covered by the FLSA at the rate of one-and-one-half times the employee's regular rate of pay *for all hours worked* in a workweek in excess of 40, including travel time between work locations. 29 U.S.C. § 207(a). In the present case, plaintiffs' declarations establish that they perform tasks identical to those performed during their regularly scheduled shift during their pre-shift, post-shift, and/or meal period time. This pre-shift, post-shift, meal period and travel/timekeeping work results in plaintiffs working more than 40 hours per week approximately 3 out of every 4 weeks. This activity is clearly compensable work under the FLSA, and therefore defendant's failure to pay plaintiffs for this work time at one-and-one-half times their regular rate of pay for this work time violates the FLSA.

Moreover, as noted above, defendant's policy and practice is to ***actually record*** pre-shift and post-shift time in its timekeeping system by labeling it as "uncompensated hours" or "noncompensable hours." This time is categorized as "uncompensated" in defendant's system simply because it has not been pre-approved, despite the fact that plaintiffs have been "suffered" or "permitted" to work such time in accordance with the FLSA. Ex. B-3, 9, 15, 21, 27; *See* 29 U.S.C. § 203(g) (defining "employ" as "to suffer or permit to work"); *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 289 (2d Cir. 2008) (noting that an employer may not avoid its obligations under the FLSA if employees "voluntarily engage in inadequately compensated work"); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation

even where the employee fails to claim overtime hours."). Accordingly, all plaintiffs and putative plaintiffs are subject to this same policy and practice, which violates the FLSA.

       *d.  Late Payment of Overtime*

       In addition, defendant has a common practice of violating the prompt payment requirements of the FLSA by failing to pay employees in a timely manner for their overtime work. *See* 29 C.F.R. § 778.106 ("Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and ***in no event may payment be delayed beyond the next payday*** after such computation can be made.") (emphasis added); *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998) (discussing FLSA's prompt payment requirement); *Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 136 n.4 (3d Cir. 1999) (finding that prompt payment is required under the FLSA because "to hold otherwise would negate [the FLSA's] overtime provisions"); *Scott v. City of N.Y.*, 592 F. Supp. 2d 475, 484 n.60 (S.D.N.Y. 2008) ("Long-standing precedent mandates this prompt accounting requirement."). Plaintiffs' declarations demonstrate that when they receive cash overtime payments, the payment has been delayed beyond the pay period after the work is performed and in which it can be computed and is delayed weeks and sometimes months beyond when the employee was paid for his or her non-overtime work. Ex B-5, 11, 17, 23, 29. The cause of the delay is simply that the plaintiff's manager has not gotten around to transmitting the proper paperwork to process the overtime payment.  This practice, which applies to all plaintiffs, violates the plain language of the FLSA's regulations that require that the employees be paid for overtime in a prompt manner, meaning at the same time that the employee is being paid for non-overtime work.

## IV.     PLAINTIFFS' PROPOSED NOTICE

The Second Circuit requires that the notice to be sent to the putative plaintiffs inform them about the allegations in the complaint, state that the court is not taking a position on plaintiffs' allegations, and acknowledge that the defendant denies the allegations. *See Delaney v. Geisha NYC*, LLC, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (noting that court-supervised notice should provide "'accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate'") (quoting *Fasanelli v. Heartland Brewery, Inc.,* 516 F.Supp.2d 317, 323 (S.D.N.Y. 2007)). Plaintiffs have attached a proposed notice, compliant with these rules, to be sent to putative plaintiffs who have worked in the same job titles as plaintiffs at any time since November 9, 2013, to inform them about the instant case and to provide them with an opportunity to join.

Plaintiffs request that Defendants provide the names, last known addresses, telephone numbers, and email addresses for all potential opt-in plaintiffs to facilitate notice consistent with the methods of service approved by courts in this Circuit. *See e.g., Mark v. Gawker Media LLC,* 2014 U.S. Dist. LEXIS, at *7 (S.D.N.Y. Nov. 3, 2014) (Nathan, J.); *Hernandez v. Merrill Lynch & Co.*, 2012 U.S. Dist. LEXIS 49822 (S.D.N.Y. Apr. 6, 2012); *Varghese v. JP Morgan Chase & Co.*, 2016 U.S. Dist. LEXIS 122428 (S.D.N.Y. Sep. 8, 2016); *Pippins v. KPMG LLP*, 2012 U.S. Dist. LEXIS 949, at *41 (S.D.N.Y. Jan. 3, 2012); *Jacobs v. Duane Reade, Inc*., No. 11 Civ. 0160, 2012 U.S. Dist. LEXIS 11053, 2012 WL 260230, at *27 (S.D.N.Y. Jan. 27, 2012). Plaintiffs request email addresses because "courts in [the Southern District of New York] have found that 'given the reality of communications today…email notice in addition to notice by first class mail is entirely appropriate.'" *Varghese*, 2016 U.S. Dist. LEXIS 122428, at *26 (quoting

17

*Pippins*, 2012 U.S. Dist. LEXIS 949, at *41). Further, "in this day of electronic communication, courts have authorized defendants to provide email addresses." *Hernandez*, 2012 U.S. Dist. LEXIS 49822, at *24. *See also Martin v. Sprint/United Mgmt. Co.,* 2016 U.S. Dist. LEXIS 352 at *58 (S.D.N.Y. Jan. 4, 2016) ("Courts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases"); *Michael v. Bloomberg L.P.,* 2015 U.S. Dist. LEXIS 51030 (S.D.N.Y. Apr. 17, 2015) (permitting plaintiff to send notice via email); *Ahmed v. T.J. Maxx Corp.,* 2012 U.S. Dist. LEXIS 162825, at *19 (E.D.N.Y. Nov. 14, 2012) ("given the reality of communications today, the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate").

## V.        CONCLUSION

Plaintiffs have made the requisite modest factual showing that the City of New York has implemented policies and practices that deprive employees in the Department of Homeless Services in the positions of Peace Officer and Sergeant of overtime compensation that the FLSA mandates be paid to the plaintiffs and paid promptly. Accordingly, plaintiffs respectfully request that this Court: (1) authorize this case to proceed as a collective action; (2) provide plaintiffs' counsel with the names, last known addresses, and e-mail addresses of all eligible Department of Homeless Services employees who have worked for the City of New York in all DHS facilities at any time since November 9, 2013; and (3) direct the issuance of plaintiffs' proposed notice, attached as Exhibit A, to all prospective class members.

Dated: January 19, 2017

Respectfully submitted,


_____ /s/ *Gregory K. McGillivary* ___
Gregory K. McGillivary
David Ricksecker
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@wmlaborlaw.com
dr@wmlaborlaw.com


_____ /s/ *Hope Pordy* _____
Hope Pordy
SPIVAK LIPTON LLP
1700 Broadway
Suite 2100
New York, N.Y 10019
Phone: (212) 765-2100
hpordy@spivaklipton.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Motion For Conditional Certification And Notice To Putative Plaintiffs Pursuant To 29 U.S.C. § 216(b) and accompanying documents were served on the following individuals on January 19, 2017 by filing the document on the Court's ECF system:

> Kerrin A. Bowers
> Assistant Corporation Counsel
> Corporation Counsel of the City of New York
> 100 Church Street
> New York, New York 10007
> (212) 356-2473
> kbowers@law.nyc.gov

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005
(202) 833-8855
(202) 452-1090 (Facsimile)
gkm@wmlaborlaw.com
