16 Civ. 08719 (AJN)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENRY CAMPBELL, et al.,

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**JAMES E. JOHNSON**
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street - Room 2-139/125*
*New York, NY 10007*

*Of Counsel:  Kerrin A. Bowers, J. Kevin Shaffer*
*Tel:  (212) 356-2473/1105*
*Matter No.* 2016-048230

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 3

ARGUMENT ............................................................................................................................... 4

     PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ........... 4

         A.    Legal Standard On A Motion For Summary Judgment ......................................... 4

         B.    Defendant Withdraws Its Seventh Affirmative Defense ....................................... 5

         C.    Plaintiffs Are Not Entitled to Summary Judgment on Count I Because They Have Not Established that Defendant Had Knowledge That Plaintiffs Performed Uncompensated Work and Discouraged Them From Seeking Compensation ...... 5

         D.    The City Properly Calculated The Regular Rate For Plaintiffs Maniotis and Rosario And Premium Rate For Compensatory Time For Plaintiffs Abraham and Rosario ................................................................................................................. 13

         E.    Plaintiffs Are Not Entitled To Liquidated Damages............................................. 14

         F.    Plaintiffs Have Not Established That Any Violation Of The FLSA Was Willful.18

     CONCLUSION.......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................5

*Boelk v. AT&T Teleholdings, Inc.*,
2013 U.S. Dist. LEXIS 101111 (W.D. Wis. Jan. 10, 2013) ....................................6

*Bowrin v. Catholic Guardian Soc'y*,
417 F. Supp. 2d 449 (S.D.N.Y. 2006)..................................................................19

*Brock v. Superior Care Inc.*,
840 F.2d 1054 (2d Cir. 1988)............................................................................14

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*,
150 F.3d 132 (2d Cir. 1998).................................................................................5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................5

*Chambers v. TRM Copy Ctrs. Corp.*,
43 F.3d 29 (2d Cir. 1994)...................................................................................5

*Cross v. Ark. Forestry Comm'n*,
938 F.2d 912 (8th Cir. 1991) ............................................................................17

*De La Cruz v. City of New York*,
2017 U.S. Dist. LEXIS 227758 (S.D.N.Y. Sept. 30, 2017)...............................11, 12

*DeBejian v. Atlantic Testing Lab., Ltd.*,
64 F. Supp. 2d 85 (N.D.N.Y 1999) ....................................................................20

*Foster v. City of New York*,
No. 14 CV 4142 (S.D.N.Y.) ...............................................................................11

*Grosswiler v. Freudenberg-NOK Sealing Techs.*,
U.S. Dist. LEXIS 109592 (N.D. Ohio Aug. 19, 2015) .........................................10

*Herman v. RSR Sec. Servs. Ltd.*,
172 F.3d 132 (2d Cir. 1999)........................................................................15, 18

*Holzapfel v. Town of Newburgh*,
145 F.3d 516 (2d Cir. 1998)...............................................................................6

*Inclan v. N.Y. Hosp. Grp., Inc.*,
    95 F. Supp. 3d 490 (S.D.N.Y. 2015).............................................................17

*Kadden v. VisuaLex, LLC*,
    910 F. Supp. 2d 523 (S.D.N.Y. 2012).........................................................19

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
    274 F.3d 706 (2d Cir. 2001)..........................................................................6

*Kuebel v. Black & Decker Inc.*,
    643 F.3d 352 (2d Cir. 2011)..........................................................................6

*McFeeley v. Jackson St. Entm't, LLC*,
    825 F.3d 235 (4th Cir. 2016) .......................................................................17

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1988).....................................................................................19

*Murray v. City of New York*,
    2020 U.S. Dist. LEXIS 22783 (S.D.N.Y. Feb. 10, 2020)...........................8

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*,
    164 F.3d 736 (2d Cir. 1998)..........................................................................9

*Padilla v. Sheldon Rabin, M.D., P.C.*,
    2016 U.S. Dist. LEXIS 46633 (E.D.N.Y. Apr. 6, 2016) ...........................19

*Parada v. Banco Indus. de Venez.*,
    753 F.3d 62 (2d Cir. 2014)....................................................................18, 19

*Perez v. Mountaire Farms*,
    650 F.3d 350 (4th Cir. 2011) .......................................................................17

*Reich v. S. New Eng. Telecomms. Corp.*,
    121 F.3d 58 (2d Cir. 1997)....................................................................15, 17

*Ruiz v. Citibank, N.A.*,
    93 F. Supp. 3d 279 (S.D.N.Y. 2015)...........................................................12

*White v. Baptist Mem'l Health Care Corp.*,
    699 F.3d 869 (6th Cir. 2012) .........................................................................6

## Federal Statutes

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*............................................ *passim*

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................................5

Local Rule 56.1 ................................................................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs are 494 current or former Special Officers ("Officers") or Supervising Special Officers, Level I ("Sergeants") who worked at the City of New York's ("City" or "Defendant") Department of Homeless Services ("DHS") at some point since November 9, 2013. Plaintiffs allege that the City failed to pay overtime wages in accordance with the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), for work performed before their scheduled hours, after their scheduled hours, and during their scheduled meal periods. All Plaintiffs allege that they are entitled to damages under the FLSA because they were not compensated for all time allegedly worked, but not reported to DHS, in excess of their regular shifts ("Off-the-Clock Claim"). Additionally, Plaintiff Jessica Maniotis ("Maniotis") and Plaintiff Edwin Rosario ("Rosario") allege that the City improperly calculated the regular rate of pay ("Regular Rate Claim"), Plaintiff Henry Campbell ("Campbell") alleges that he was not paid overtime compensation in a timely manner ("Timeliness Claim")[1] and Plaintiff Jermaine Abraham ("Abraham") and Rosario claim that they were improperly paid straight time for compensatory time, instead of at a premium rate ("Straight Time Claim"). Notably, Plaintiffs' Off-the-Clock claim does not stem from the City's failure to pay overtime that was presented to it for payment through the City's web-based timekeeping system ("CityTime"), a step Plaintiffs acknowledge is necessary to generate payment.

On July 25, 2017, the Court conditionally certified Plaintiffs' Off-the-Clock claim as a collective, but denied Plaintiffs' certification motion in connection with their Regular Rate Claim; (ii) Timeliness Claim; and (iii) Straight Time Claim. *See* ECF Dkt. No. 37. The Court also dismissed Plaintiffs' Regular Rate Claim as to Plaintiffs Abraham, Campbell, and Sheri

---

[1] Plaintiffs are not moving for summary judgment on the Timeliness Claim.

Silver ("Silver"); Plaintiffs' Timeliness Claim as to Plaintiffs Abraham, Maniotis, Rosario, and Silver; and Plaintiffs' Straight Time Claim as to Plaintiffs Campbell, Maniotis, and Silver. *See id.*

At the outset of discovery, the Court approved a joint stipulation regarding Plaintiffs' Off-the-Clock claim, by which the parties jointly selected 24 randomly-chosen plaintiffs to serve as "Discovery Plaintiffs" for written, electronic, and deposition discovery, constituting a wide swath of plaintiffs in varying titles and work locations. *See* ECF Dkt. No. 54

Of these initial 24 Discovery Plaintiffs, 12 Plaintiffs failed to comply with deposition notices, no longer wished to pursue this action, and/or lived out of state, and were replaced with 12 jointly selected second-phase Discovery Plaintiffs. *See* ECF Dkt. Nos. 89, 99. By the close of fact discovery on February 8, 2019, Defendant had deposed and received discovery materials from 23 Discovery Plaintiffs: 18 Officers and 5 Sergeants. *See* ECF Dkt. No. 99.

Summary judgment is now being sought with respect to the following: all Plaintiffs' Off-the-Clock claims, Plaintiff Maniotis' and Plaintiff Rosario's Regular Rate Claim and Plaintiff Abraham's and Plaintiff Rosario's Straight Time Claim. For the reasons set forth below, the motion should be denied. First, Plaintiffs are not entitled to summary judgment with respect to Count I because they have not established as a matter of law that the City had actual or constructive knowledge that they performed uncompensated work. Second, Plaintiffs Maniotis, Rosario and Abraham are not entitled to summary judgment with respect to Counts II and IV because the City included the contractual night shift differential in its calculation of the regular rate when required and also routinely paid the premium rate for compensatory time for hours over 40. Third, even if Plaintiffs prevail, they are not entitled to liquidated damages because the

record evidence shows that the City acted in good faith to comply with the FLSA.  Finally, Plaintiffs have not set forth sufficient evidence establishing that the City's conduct was willful such that the statute of limitations should be extended to three years.

## STATEMENT OF FACTS

The material, undisputed facts in this case are set forth in Defendant's Local Rule 56.1 Statement of Undisputed Material Facts, dated August 28, 2020 (ECF Dkt. No. 150) ("Def's 56.1").  For the Court's convenience, a brief summary of the facts is set forth below.

CityTime is a web-based software tool that City employees use to manage their time and attendance and electronically submit their timesheets and overtime requests for approval.  *See* Def's 56.1 ¶¶ 20, 23.  Plaintiffs record their arrival and departure times at DHS facilities in CityTime by either using a hand scanner or Web Clock, which is a program on designated computers located within DHS facilities.  *See id.* ¶¶ 25, 26.

Plaintiffs submit requests in the CityTime program for compensation when they work beyond their regularly scheduled shifts.  *See id.* ¶ 58.  Plaintiffs are responsible for submitting overtime requests for any time worked outside of their normal schedule.  *See id.*  In order for Plaintiffs to be compensated for time worked outside of their regular shift, whether that work was performed before or after their regularly scheduled shift or during the meal period, Plaintiffs must submit an overtime request in CityTime.  *See id.* ¶¶ 58, 70.  Indeed, Plaintiffs universally testified they understood that in order to be paid for overtime worked beyond their regular shift they were required to submit an overtime request in CityTime.  *See id.* ¶ 99.

The CityTime sign-in page reminds employees to perform work only during their scheduled hours unless directed otherwise. *See id.* ¶ 75.  CityTime also directs employees to ensure all hours worked are properly and accurately recorded so that the employee may be paid

for all hours worked.  *See id.* ¶ 73.  Each week employees certify by electronic signature that they have reviewed the hours they recorded and submitted and that those hours are correct.  *See id.* ¶¶ 77-80.  The employees must also verify that if there is any time recorded in CityTime before or after their scheduled shift, or during the lunch break, for which they did not seek overtime, the time was not time spent working.  *See id.* ¶ 78.  The CityTime system records the time employees are present at the worksite outside of their regularly scheduled shift, but do not request overtime compensation for, as "noncompensable" time.  *See id.* ¶ 120.

Notably, Plaintiffs routinely requested and received overtime compensation for work performed outside of their regular shifts.  *See id.* ¶¶ 99, 100, 105, 109.  Plaintiffs were paid $7,070,464 in overtime compensation and received compensatory time in the amount of 99,923 hours between November 9, 2013 and January 5, 2019.  *See id*. ¶¶ 105, 106.  These amounts, both in cash and compensatory time, were the result of 67,811 separate instances of overtime payments.  *See id.* ¶ 107.  Between November 9, 2013 and January 5, 2019, over 98% of Plaintiffs' overtime requests were approved.  *See id.* ¶ 109.  Of the 67,811 separate instances in which Plaintiffs received overtime compensation, 5,403 of these instances were for periods of work amounting to 30 minutes or less.  *See id.* ¶ 108.

### ARGUMENT

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

**A.    Legal Standard On A Motion For Summary Judgment**

A motion for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences in a light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.,* 150 F.3d 132, 137 (2d Cir. 1998).  Thus, summary judgment is improper where there is any evidence from which a reasonable inference may be drawn in favor of the non-moving party on a material issue of fact.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

**B.     Defendant Withdraws Its Seventh Affirmative Defense**

Defendant withdrew its seventh affirmative defense on October 2, 2020.  *See* ECF Dkt. No. 155.  As such, the Court does not need to consider Plaintiffs' arguments in connection with this claim.  *See* Pls' Mem of Law, at 6-8.

**C.     Plaintiffs Are Not Entitled To Summary Judgment On Count I Because They Have Not Established That Defendant Had Knowledge That Plaintiffs Performed Uncompensated Work And Discouraged Them From Seeking Compensation**

Plaintiffs argue that they are entitled to summary judgment with respect to their Off-the-Clock Claim because the City had actual or constructive knowledge that Plaintiffs were working outside of their scheduled shifts and did not pay them.  *See* Pls' Mem of Law, at 8-17. Moreover, Plaintiffs argue that their work assignments required them to work outside of their scheduled shift and the City discouraged the reporting of overtime that was not pre-approved. *See id.*  Neither argument is supported by the record and their motion for summary judgment must be denied.

**1.   Plaintiffs Have Not Established That The City Knew They Performed Uncompensated Work**

In order to be liable for unpaid overtime under the FLSA, an employer must have knowledge that (1) work was performed and (2) it was uncompensated. *See Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 361 (2d Cir. 2011) ("To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he or she performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."); *Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 718 (2d Cir. 2001) ("an employee must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time, so long as the employer 'knows or has reason to believe that the employee is continuing to work and that work' was 'suffered or permitted' by the employer") (quoting 29 C.F.R. § 785.11); *see also Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) ("An employer cannot suffer or permit an employee to perform services about which the employer knows nothing."); *White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 875 (6th Cir. 2012) ("[T]he relevant knowledge is not 'I know that the employee was working,' but 'I know that the employee was working and not reporting his time.'") (quoting *Raczkowski v. TC Const. Co., Inc.,* 8 F.3d 29 (9th Cir. 1993)).[2]

Here, the following facts with respect to the City's knowledge are undisputed:

- Employees are paid on a "pay to schedule" system, whereby the default is that they are paid according to their regular shifts. Def's 56.1 ¶ 24.

- If employees work hours other than their regular shifts, they must submit requests for compensation in CityTime. *See id.* ¶¶ 58, 70.

---

[2] *See also Boelk v. AT&T Teleholdings, Inc*., No. 12-cv-40-bbc, 2013 U.S. Dist. LEXIS 101111, *17 (W.D. Wis. Jan. 10, 2013) (Plaintiffs' statement that employees "were working through their lunches and breaks" does not establish that supervisor knew employees were working without pay) (*citing Kellar v. Summit Seating, Inc.,* 664 F.3d 169, 177 (7th Cir. 2011) (affirming summary judgment for employer where it knew plaintiff punched in early but not that plaintiff was performing work between the time she punched in and the scheduled start of her shift)).

- Plaintiffs now seek overtime compensation for time outside of their regular shifts: (i) the time between when they clocked in and their shift started: (ii) the time during their half-hour lunch break; and (iii) the time between the end of their shift and when they clocked out.  *See* Complaint, ECF Dkt. No. 1, ¶¶ 12-23, 30-35.

- Plaintiffs knew that they had to request compensation for such work through CityTime in order to receive compensation for that time.  *See* Def's 56.1  ¶¶ 71.

- Plaintiffs routinely utilized CityTime to submit requests for overtime compensation.  *See* Def's 56.1 ¶¶ 107, 108.  In fact, over 98% of overtime requests submitted by Plaintiffs through CityTime between November 9, 2013 and January 5, 2019, were approved. *See id.* ¶  109.

Thus, it is uncontroverted that the City maintained a process for employees to record and request compensation that Plaintiffs regularly used.

As a threshold matter, Plaintiffs do not establish as a matter of law that they were actually performing work before or after their shift and during their meal break.  Plaintiffs cite to no evidence – other than their own testimony – to establish that they were working outside their regular schedule and not being paid for such time.  *See* Pls' Mem of Law, at 9-10.  The crux of Plaintiffs argument is that in order to complete their assigned tasks they must perform work outside their schedule.  *See id.*  However, Plaintiffs submit no evidence, other than their conclusory say-so, to support these allegations.

Rather, Plaintiffs allege that supervisors were aware of uncompensated work before their shifts, after their shifts and during their unpaid meal breaks based on their assignment of tasks to and/or interactions with the Plaintiffs.  *See* Pls' Mem of Law, at 11.  In support of this claim, however, Plaintiffs cite to their own deposition testimony and their own interrogatory responses to supposedly establish what supervisors assigned them tasks and/or witnessed the performance of tasks that required them to work outside of their work schedules.

*Id.* Notably absent from Plaintiffs' motion is any testimony from any of Plaintiffs' supervisors attesting to this alleged fact. Also absent from the record is any documentary evidence supporting this claim. Plaintiffs adduce no memoranda, such as memo book entries, documenting assignments given to them before/after their shift or during their meal break.

To that end, Plaintiffs are responsible for maintaining activity logs, or memo books, in which they are responsible for recording information regarding their tours of duty and assignments for each day, including but not limited to, the start and end time for their tours, posts or assignments for the day, supervisors in attendance, and meal times. Def's 56.1 ¶¶ 17, 37. Absent from the record is any documentary evidence that Plaintiffs were working outside their regular schedule without compensation. Indeed, Plaintiffs submit no memo book entries to substantiate their claims that they responded to incidents while off-the-clock. Plaintiffs' failure to adduce any evidence, other than their own testimony which simply mirror the allegations in their Complaint, to substantiate their allegations warrants denial of Plaintiffs' motion as to their Off-the-Clock Claim.

Moreover, Plaintiffs generally state that they have worked off-the-clock and should be compensated, but do not clearly account for the amount of unpaid overtime they claim. As recognized by Judge Castel in *Murray v. City of New York*, No. 16 CV 8072, 2020 U.S. Dist. LEXIS 22783 *38 (S.D.N.Y.  Feb. 10, 2020),[3] the plaintiffs failure to "direct the Court to evidence of the actual hours and corresponding amount of unpaid overtime they claim to have worked and the resulting damages" necessitated the denial of plaintiffs' motion for summary judgment as to their off-the-clock claims, as they failed to satisfy their burden. Plaintiffs here

---

[3] The plaintiffs in *Murray* were represented by the same Plaintiffs' counsel in this action.

have similarly failed to satisfy their burden on this motion by failing to advance any evidence of the actual hours of overtime worked and corresponding damages requires that Plaintiffs' Off-the-Clock Claim be dismissed.

As set forth in Defendant's Motion for Summary Judgment ("Defendant's Motion" or "Def.'s Mot."), even if Plaintiff could establish that they were performing "work" during time reflected as "noncompensable" in CityTime, which they have not done, the City did not have actual or constructive knowledge of such work.  Plaintiffs claim that Defendant had knowledge that they performed uncompensated work because (1) supervisors see Plaintiffs perform work and (2) CityTime tracks and records all time that Plaintiffs are present at the workplace.  However, neither argument is sufficient to prove actual or constructive knowledge.

Plaintiffs argue that Defendant had actual knowledge that Plaintiffs were working beyond their shifts because supervisors assigned Plaintiffs tasks and/or observed Plaintiffs responding to incidents after their shifts and during their unpaid meal breaks.  *See* Pls' Mem of Law, at 11.  As noted above, Plaintiffs cite only to their own deposition testimony and own interrogatory responses to supposedly establish what tasks their supervisors assigned them that required them to work outside of their work schedules.  *Id.*  When ruling on a motion for summary judgment, a district court may only consider evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998).  Here, Plaintiffs have failed to advance evidence specifically indicating what work they were assigned outside of their shift and therefore this testimony should not be considered by the Court when deciding this motion.

Moreover, Plaintiffs' claim that their supervisors assigned them work outside of their shift or were otherwise aware that they were working outside of their shift, is dubious as it

is more than probable that Plaintiffs are supervised by other Plaintiffs in this action. Specifically, Sergeants, including those who are Plaintiffs in this action, supervise Special Officers and review their timesheets and overtime requests. *See* Def. 56.1, ¶ 14, 101. Thus, Plaintiffs in many instances likely attribute the failure to be compensated for work outside of their scheduled shift on their co-Plaintiffs. To be crystal clear, Plaintiffs employed as Special Officers are claiming that Plaintiffs employed as Sergeants created the very liability about which the Specials Officers now complain. The conflict this creates, i.e. one set of plaintiffs allegedly creating damages for another set of plaintiffs, cannot be understated but nevertheless goes unaddressed by Plaintiffs. Plaintiffs further argue that Defendant had actual or constructive knowledge that Plaintiffs were working off-the-clock because CityTime tracks and records all time that Plaintiffs are present at the workplace. However, it is undisputed that Plaintiffs are now seeking damages for time that they allegedly worked but did not report as time worked via CityTime. As such, Plaintiffs did not follow established procedures, of which they were most certainly aware, to provide the City with the requisite knowledge of the alleged off-the-clock work. "When an employer has an established policy for tracking overtime, 'an employer is not liable for nonpayment if the employee fails to follow the established process.'" *Grosswiler v. Freudenberg-NOK Sealing Techs.*, No. 3:14 CV 1551, 2015 U.S. Dist. LEXIS 109592, at *11 (N.D. Ohio Aug. 19, 2015), *aff'd*, 642 Fed. Appx. 596 (6th Cir. Mar. 2, 2016) (quoting *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012)).

It is uncontroverted that CityTime identifies time present at work, and not time spent working. *See* Def's 56.1 ¶ 120. Even if supervisors, including the Sergeants in this case, may have seen Plaintiffs physically present at their workplace and even performing work, they had no reason to believe Plaintiffs were performing *uncompensated* work where Plaintiffs'

actions clearly demonstrated that they knew how to, and routinely did, seek compensation for time worked outside of their shift.  For example, Plaintiffs requested, and were approved for, overtime compensation for working through their meal periods on at least 3,915 occasions.  *See* Ex. XX to the Declaration in Support of Defendant's Motion for Summary Judgment (ECF Dkt. No. 152-51), Erath Decl., ¶ 10(N).  Similarly, Plaintiffs made 21,849 requests for pre-shift overtime and made 41,727 post-shift overtime requests.  *See id.* ¶¶ 10(L)-(M).  Moreover, of the 80,000 requests for overtime compensation submitted by Plaintiffs in CityTime, 77,104 were approved. *See id.* ¶ 10(G).  Given the number of requests made for overtime compensation made by Plaintiffs, it is simply implausible to argue that Plaintiffs' supervisors should have known they were not requesting compensation for all overtime work performed.

For this reason, Plaintiffs' dismissal of the fact that each of the Plaintiffs knew how to use CityTime to request compensation for overtime, and did so on a frequent basis, is fatal to their claim.  Because Plaintiffs routinely utilized CityTime to submit requests for overtime compensation, their supervisors had no reason to doubt Plaintiffs were not working during the time recorded in CityTime as noncompensable.  Granting Plaintiffs summary judgment in the face of these facts would render implausible any attempt by the City to meet its obligations under the FLSA in asking its more than 200,000 employees to adhere to a procedure for reporting overtime in order to receive compensation.  Supervisors cannot be expected to observe every minute that employees perform and double-check it against the employee's certified timesheet, and the FLSA does not require such drastic micromanagement.

Finally, Plaintiffs' reliance on the decisions in *Foster v. City of New York*, No. 14 CV 4142 (S.D.N.Y.) ("*Foster*"), *De La Cruz v. City of New York*, No. 14 CV 9220 (S.D.N.Y) ("*De La Cruz*") (collectively "Foster/DLC Order"), 2017 U.S. Dist. LEXIS 227758 (S.D.N.Y.

Sept. 30, 2017) is misplaced.  With all due deference to the rulings in these cases, the decisions are not binding on this Court.  Further, the issue of whether a plaintiff who failed to use her employer's reasonable process to request overtime may defeat summary judgment on a claim for non-payment of that overtime without showing that use of the system was discouraged has not yet been addressed by the Second Circuit.

For example, in finding that the evidence established that the City was aware that the plaintiffs in *Foster* and *De la Cruz* performed uncompensated overtime work, Judge Gardephe relied on the actual testimony *of Plaintiffs' supervisors* that they directly observed and were aware that employees were working outside their shifts without compensation.  *See Foster/De la Cruz,* 2017 U.S. Dist. LEXIS 227758 at *117-118.  Multiple plaintiffs, including supervisors, also testified that the fact that work was being performed outside of scheduled shifts without compensation was openly discussed in meetings with supervisors.  *See id.* at *117. Here, the record is devoid of any similar evidence in that there is absolutely no testimony from Plaintiffs' supervisors establishing their knowledge of off-the-clock work.  Similarly, there is no evidence that the Plaintiffs in this action were discouraged from submitting requests for compensation for work performed outside of their shifts.   Indeed, it establishes the exact contrary.

Because they cannot point to admissible evidence that they were discouraged from requesting compensation for all overtime, Plaintiffs point to Defendant's policy that overtime should be approved prior to being worked.  However, there is nothing unlawful about requiring an employee to obtain approval from a supervisor to work overtime in advance of the employee working such overtime.  *See Ruiz v. Citibank, N.A.,* 93 F. Supp. 3d 279, 289-90 (S.D.N.Y. 2015).  Further, Plaintiffs' argument completely ignores the fact that it is Defendant's

policy to pay employees for overtime that was not pre-approved.  *See* Def. 56.1 ¶¶ 67-68.  Thus, Defendant's policy that overtime should be pre-approved has not served as a bar to the receipt of compensation for overtime when employees fail to seek such pre-approval, and cannot be relied upon as evidence that the Plaintiffs here were prevented from seeking approval for overtime worked.

**D.      The City Properly Calculated The Regular Rate for Plaintiffs Maniotis and Rosario And Premium Rate For Compensatory Time for Plaintiffs Abraham and Rosario**

Plaintiffs Maniotis and Rosario also allege that they are entitled to summary judgment with respect to their Regular Rate Claim because Defendant miscalculated the regular rate by failing to include the night-shift differential and meal allowance payments in the calculation.  *See* Pls' Mem of Law, at 20.  As a starting point, Plaintiffs have not alleged that Defendant miscalculated the regular rate by failing to include meal allowance payments in the calculation.  *See* Complaint dated November 9, 2016, ¶¶ 24-25, 36-41, ECF Dkt. No. 1.  As such, Plaintiffs claims with respect to meal allowance payments should be dismissed.

Defendant does include the night-shift differentials when calculating Plaintiff Maniotis' and Plaintiff Rosario's regular rate of pay.  *See* Ex. XX, Erath Decl., ¶¶ 10(H)-(I).  In fact, Plaintiff Maniotis received $5,387 in night-shift differential payments during the relevant period and Plaintiff Rosario received $1,614 in night shift-differentials during the relevant period.  *Id.*  The only "evidence" submitted by Plaintiffs for the proposition that the night-shift differential is not included is the Lanier Declaration.  *See* Pls' Mem of Law, at 21.  The Lanier Declaration, however, is devoid of any evidence of how he concludes that night-shift differential was not included within the regular rate of pay.  *See* Pls' Ex. 7, ¶ 15.  Rather, he generally describes his calculation for the regular rate of pay and concludes that a certain dollar amount of

night-shift differential or meal allowance payments were not included in the regular rate of pay. *See* Pls' Ex. 7, ¶¶ 15, 16.  That conclusory statement is insufficient to establish Plaintiffs' claim. Accordingly, Plaintiffs' motion for summary judgment with regard to the Regular Rate Claim should be denied.

With respect to Plaintiff Abraham's and Plaintiff Rosario's Straight Time Claim, there were 45 separate instances where Plaintiff Abraham received premium compensatory time and 59 separate instances where Plaintiff Rosario received premium compensatory time during the relevant period.  *See* Ex. XX, Erath Decl., ¶¶ 10(J)-(K).  While the record shows that while Plaintiff Abraham and Plaintiff Rosario received straight compensatory time (that is, receiving overtime in compensatory time at the rate of 1 hour for 1 hour) for hours worked over 40 hours/week, those instances were limited to merely 3 out of 45 times and 1 out of 59 times, respectively.  *See id.*

**E.     Plaintiffs Are Not Entitled To Liquidated Damages**

Plaintiffs also argue that the Court should award them liquidated damages if they prevail in their motion because the City cannot demonstrate that it acted in good faith.  Plaintiffs are incorrect.

If a plaintiff successfully establishes a violation of the FLSA, liquidated damages in an amount equal to the amount of unpaid wages at issue are imposed, *unless* the employer establishes it acted in good faith.  *See* 29 U.S.C. § 216(b). Whether liquidated damages are appropriate is a matter of law within the Court's discretion.  *See* 29 U.S.C. § 260; *see also Brock v. Superior Care Inc.,* 840 F.2d 1054, 1063 (2d Cir. 1988) (holding that an award of liquidated damages under the FLSA is within the discretion of the district court) (citing *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)).

In order to prevail on their motion, Plaintiffs must establish that – as a matter of law – the City took no "active steps to ascertain the dictates of the FLSA" and therefore took no action to comply with the FLSA.  *See Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 142 (2d Cir. 1999); *see also Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 71 (2d Cir. 1997) ("'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development.  It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them.").  Here, Plaintiffs should not be awarded liquidated damages because they have not met their burden of establishing a violation of the FLSA with respect to any of their claims.  However, even if this Court finds a violation did occur, the undisputed material facts show Defendant took active steps to ascertain and comply with the FLSA's requirements, thereby precluding an award of liquidated damages on any claim.

## 1.  The City Demonstrated Subjective Good Faith

In developing CityTime – which serves as the end-point of the timekeeping system for the At-Issue Titled employees –  the City took steps to ensure that it would enable the City's FLSA compliance, including by:

- Providing CityTime training, including self-paced online training, to all employees to ensure that they understood how to make an overtime request and that they were responsible for making all overtime requests in CityTime. *See* Def's 56.1 ¶¶ 96, 98;

- Upon advice of counsel, adding a certification to Plaintiffs' weekly timesheets, which was drafted by the City's chief labor and employment law counsel, requiring all employees to certify that the hours recorded on their timesheets are accurate and that they requested overtime for any hours worked outside of their regular schedule. *See id.* ¶¶ 82, 119;

- Convening weekly meetings, composed of high-ranking members of OPA, OLR, and the Law Department, to ensure that CityTime is programmed in such a way that it complies with the FLSA. *See id.* ¶¶ 115-116; and

- Relying upon the advice of counsel to determine how to calculate the rate at which overtime is paid when employees receive differentials in addition to their salaries. *See id.* ¶ 118.

In addition to these Citywide initiatives, DHS took additional steps to ensure statutory compliance.  DHS promulgated a Code of Conduct which included provisions with respect to overtime, namely that "[e]mployees shall not report before or remain on Department premises after their regular working hours unless overtime or change of schedule has been previously approved and appropriate supervisory monitoring of such activity is provided."  Def's 56.1 at ¶ 35.  Additionally, DHS, through the Office of Payroll Administration, distributed guidance to employees regarding information about what the FLSA requires, how it affects a covered employee, including how it impacts a covered employee's work schedule, and explaining the City's policy with respect to overtime.  *See id.* ¶¶ 92-94.  One such bulletin was issued to DHS employees on November 22, 2016.  *See id.* ¶ 92.  This bulletin specifically instructed that: "you may not perform any tasks related to your assigned duties and responsibilities before or after your regular schedule (including work from home before or after your regular schedule) or during your dedicated meal break without receiving approval to perform such work in accordance with your agency's policy."  *Id.* ¶ 93.  The bulletin goes on to provide employees with a non-exhaustive list of tasks that the employee is not permitted to perform outside of their regularly scheduled work hours, including "check[ing] voicemail or email, answer[ing] telephone calls, read[ing] or complet[ing] paperwork, load[ing], stock[ing] or check[ing] equipment, assist[ing] a client or prepar[ing] a route or schedule[ing] for the day."  *Id.* ¶ 94.

Thus, the record evidence establishes that the City demonstrated subjective good faith in complying with the FLSA, through its reliance on the advice of counsel and internal

personnel and labor relations experts in programming CityTime, inclusion of certification language, and training employees on CityTime. *See McFeeley v. Jackson St. Entm't, LLC,* 825 F.3d 235, 245 (4th Cir. 2016) (finding that the employer's consultation with an attorney regarding the employer's compliance under the FLSA, and the employer's subsequent reliance on the attorney's advice, constituted sufficient evidence of good faith to preclude an award of liquidated damages for the time period after the employer's meeting with the attorney); *Perez v. Mountaire Farms*, 650 F.3d 350, 375-76 (4th Cir. 2011) (affirming lower court's refusal to award liquidated damages because the employer relied on letters and memoranda provided by an outside attorney in implementing the practices that gave rise to the liability under the FLSA); *Cross v. Ark. Forestry Comm'n,* 938 F.2d 912, 917-18 (8th Cir. 1991) (finding that the employer's reliance on the incorrect advice provided by internal personnel experts established that the employer engaged in a subjective good faith effort to comply with the FLSA); *contra Reich*, 121 F.3d at 72 (noting the evidentiary record did not support a finding of good faith because "nowhere in [the employer's] briefs does [the employer] contend that it was relying on the advice of informed counsel."); *Inclan v. N.Y. Hosp. Grp., Inc.,* 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015) (holding that the evidence of the employer's good faith was insufficient because "the record contains no evidence as to the advice of prior counsel nor of whether [the employer] followed that advice.").  This subjectively good faith efforts precludes a finding that – as a matter of law – the City took absolutely no steps to determine whether or not its actions complied with the FLSA.  Indeed, the fact that Plaintiffs may disagree with the steps taken by the City does not negate the fact that the City expended much effort in determining that its policies and practices complied with the FLSA.

### 2. Defendant's Conduct Was Objectively Reasonable

The undisputed evidence also establishes that the City's belief that it was in full compliance with the FLSA was objectively reasonable. While Plaintiffs contend that they were not paid all of the overtime they were allegedly entitled to, there is no dispute that when Plaintiffs requested overtime through CityTime Plaintiffs were paid overtime during the relevant period. *See* Def's 56.1 ¶ 109. Indeed the evidence demonstrates that over 98% of the overtime requests made by Plaintiffs during the limitations period were approved. *See id.* Further, because CityTime requires Plaintiffs to manually request overtime each time they work outside of their regular shift, it is undisputed that Plaintiffs understood how to make an overtime request in the CityTime system. *Id.* ¶ 100. It is likewise undisputed that each Plaintiff certifies on a weekly basis that he or she has requested overtime for all hours worked. *Id.* ¶ 78.

Therefore, even if the Court grants summary judgment on some of Plaintiffs' claims, Plaintiffs are not entitled to summary judgment on liquidated damages claims, because the evidence establishes that the City engaged in subjective good faith efforts to comply with the FLSA, and that those were objectively reasonable.

### F. Plaintiffs Have Not Established That Any Violation Of The FLSA Was Willful

The FLSA provides for a two-year limitations period that may be extended for one year only where a violation was willful. 29 U.S.C. § 255(a); *Herman*, 172 F.3d at 141. That the violation was not willful is not an affirmative defense, and it is, therefore, a plaintiff's burden to prove that the limitations period should be extended. *See Parada v. Banco Indus. de Venez.*, 753 F.3d 62, 71 (2d Cir. 2014). Plaintiffs have failed to meet this burden.

"[T]o prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of

whether its conduct was prohibited by the statute." *Parada*, 753 F.3d at, 71 (quoting *Reich v. Waldbaum, Inc.,* 52 F.3d 35, 39 (2d Cir. 1995)).  Even "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *See id.; see also Padilla v. Sheldon Rabin, M.D., P.C.,* No. 15 CV 1708, 2016 U.S. Dist. LEXIS 46633, *18-19 (E.D.N.Y. Apr. 6, 2016) ("[N]either an employer's good-faith but incorrect assumption regarding its FLSA obligations, nor an employer's lack of reasonable basis for believing that it was complying with the FLSA, is by itself sufficient to demonstrate an employer's willfulness.") (internal citation omitted).   Stated differently, an employer's negligence with respect to compliance is not enough to establish willfulness and a plaintiff must present evidence establishing that the employer affirmatively knew it was violating the FLSA. *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988); *see Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 475 (S.D.N.Y. 2006).  Plaintiffs cannot meet that burden here, and Defendant is entitled to the statutory two-year limitations period as a matter of law.

As addressed above, the same evidence that establishes Defendant's good faith efforts to comply with the FLSA precludes a finding that any alleged violations were willful. There is nothing in the factual record showing that Defendant acted in reckless disregard of the law.  To the contrary, Defendant took, and continues to take, substantial measures to ensure that it was and is fully compliant with the FLSA.  *See* Def. 56.1 at ¶¶ 82, 96, 98, 115, 116, 118, 119.

Therefore, if a violation of the FLSA is ever established by Plaintiffs, the Court should dismiss any claims predating two years from the filing of any respective Plaintiffs' consent to sue.  *See Kadden v. VisuaLex, LLC,* 910 F. Supp. 2d 523, 543 (S.D.N.Y. 2012) (holding that a two year limitations period was automatic given finding that the employer acted in good faith); *Bowrin*, 417 F. Supp. 2d at 475 (granting motion for summary judgment that a

two year limitations period should apply because "Plaintiffs have not presented evidence that [the employer] knew it was violating the FLSA"); *DeBejian v. Atlantic Testing Lab., Ltd.,* 64 F. Supp. 2d 85, 93 (N.D.N.Y 1999) (applying a two year limitations period because "[a]lthough . . . [the employer] did not take sufficient steps to ensure compliance with the FLSA, [it] did make an effort to ascertain whether its policies were in compliance and, therefore, it cannot be said that [the employer] recklessly disregarded whether its conduct violated the FLSA").

## **CONCLUSION**

Defendant respectfully requests that this Court deny Plaintiffs' Motion for Summary Judgment and award Defendant such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 5, 2020

**JAMES E. JOHNSON**
Corporation Counsel of the
  City of New York
Attorney for Defendant
100 Church Street, Room 2-139/125
New York, New York 10007-2601
(212) 356-2473/1105
kbowers@law.nyc.gov
jshaffer@law.nyc.gov

By:   */s/*_____
        Kerrin A. Bowers
        J. Kevin Shaffer
        Assistants Corporation Counsel