USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   3/4/21

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Henry Campbell, *et al.*,

              Plaintiffs,

     –v–

City of New York,

             Defendant.

16-cv-8719 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiffs, employees of the New York City Department of Homeless Services, bring claims against the City of New York for failing to pay overtime, properly calculate overtime hours, and make timely overtime payments in violation of the Fair Labor Standards Act. The parties have filed cross motions for summary judgment on Plaintiffs' claims. For the reasons that follow, Defendant's motion is GRANTED IN PART and Plaintiffs' motion is DENIED.

## I.      BACKGROUND

### A.  Factual Background

The following facts are drawn from the parties' statements made pursuant to Local Civil Rule 56.1 and are undisputed unless otherwise noted.

Plaintiffs are current and former employees of the New York City Department of Homeless Services ("DHS") with job titles of "Special Officer" (Officers) or "Supervising

Special Officer" (Sergeants).  *See* Dkt. No. 164 at ¶ 1 ("Def. Response to Pl. Rule 56.1 Statement").  Plaintiffs' responsibilities include preventing and detecting crime by patrolling DHS areas and screening visitors, responding to emergencies and security incidents, helping sick, injured, or disabled individuals, and conducting criminal investigations and making arrests. *Id.* at ¶ 6.  Sergeants also ensure that there is adequate coverage at all DHS facilities, conducting roll call, preparing and maintain records, submitting reports to superiors, and testifying in court regarding arrests.  *Id.* at ¶ 7.

Plaintiffs work shifts are eight and one-half hours long, which includes a thirty-minute unpaid meal period.  *Id.* at ¶ 3.  Plaintiffs record their hours through a program called CityTime that DHS implemented in 2010, which tracks by the minute.  *Id.* at ¶ 26.  Plaintiffs are to clock in to CityTime when they arrive at their work location and clock out when they leave.  *Id.* at ¶ 28. However, Plaintiffs are only compensated for their eight-hour shift and any approved over-time hours, therefore, any time recorded in CityTime outside of those hours is deemed "noncompensable."  *Id.* at ¶¶ 31-32.  The thirty-minute meal period is automatically deducted from Plaintiff's work-time calculation, thus Plaintiffs are not required to clock in and out during that period.  *Id.*

Plaintiffs claim that they regularly perform their work duties outside of the eight out period, including before and after shifts and during their thirty-minute meal breaks.  *Id.* at ¶ 37. According to Plaintiffs, this is because they often need to get to work before their shifts starts to prepare for their job duties (e.g., perform equipment inspections, prepare for roll call) and that they often have to work during their meal break or after their shift ends due to emergent arrests or medical situations, or because the oncoming shift arrives late.  *Id.* at ¶¶ 37-38.

Generally, Plaintiffs may receive compensation for working overtime.  *Id.* at ¶ 55. However, the parties dispute whether Plaintiffs are required to receive approval *prior* to performing the overtime work.  *Id.* at 56.  Defendant maintains that, while the City's overtime policy is that Plaintiffs should request and receive approval before working any overtime hours, the City will still pay Plaintiffs for overtime worked even absent pre-approval.  *See* Dkt. No. 158 at ¶ 67 ("Pl. Response to Def. Rule 56.1 Statement").   Plaintiffs claim to the contrary that the City will not accept overtime requests that were not pre-approved prior to the overtime being worked and that when Plaintiffs made such requests, those requests were denied.  Dkt. No. 164 at ¶ 61-63.  Defendant denies that this happened and claims to the contrary that such requests are regularly approved.  *Id.*; Dkt. No. 158 at ¶ 68.

### B.  Procedural Background

On November 19, 2016, Plaintiffs filed a Complaint against Defendant alleging claims for unpaid overtime (Count I), miscalculation of the rate of overtime pay (Count II), delayed overtime payments (Count III), and miscalculation of compensatory time (Count IV).  Dkt. No. 1.  On January 19, 2017, Plaintiffs filed a motion to certify the case as a collective action and to send notice to putative plaintiffs.  Dkt. No. 17.  On January 20, 2017 Defendant filed a motion to dismiss the Complaint and then on February 16, 2017 it filed an opposition to Plaintiff's motion for certification.  Dkt. Nos. 19, 29.  Plaintiffs declined to amend their complaint.  Dkt. No. 24.

The Court addressed both motions in a Memorandum Opinion & Order on July 25, 2017. Dkt. No. 37.  The Court granted Defendant's motion in part, holding that Plaintiffs had only provided specific factual allegations for Counts II, III, and IV as to some of the plaintiffs and therefore the claims as to the others must be dismissed.  *Id*. at 18-19.  The Court also granted

Plaintiffs' motion in part, permitting conditional certification as to Plaintiffs' claims for unpaid overtime (Count I).  *Id.*

The parties then began discovery, which was completed on March 25, 2019.  Dkt. No. 106.  On April 15, 2019, Defendant filed a motion to decertify Plaintiffs' claims for unpaid overtime. Dkt. No. 115.  The Court denied that motion in an Order & Opinion on May 29, 2020. Dkt. No. 135.  On August 28, 2020, the parties filed cross motions for summary judgment and Defendant filed a motion to preclude the testimony of Plaintiffs' expert witness.  Dkt. Nos. 139, 146, and 149.   Defendant also moves to keep certain documents and information filed with Plaintiff's motion under seal.  Dkt. No. 153.  Those motions are fully briefed as of October 26, 2020.

## II.    DISCUSSION

### A.  Motion to Preclude Plaintiff's expert testimony

In support of their claims, Plaintiffs provide the expert testimony of Louis R. Lanier, Ph.D.  Dkt. No. 142-15, ¶ 1.  Dr. Lanier has a Ph.D. in Applied Economics from Clemson University and specializes in labor economics.  *Id.*  Plaintiffs retained Dr. Lanier to analyze the voluminous amounts of raw payroll and timekeeping data produced by the City and calculate Plaintiffs' alleged damages.  Dkt. No. 154 at 1-2.  Dr. Lanier has provided similar testimony in other FLSA cases.  *See, e.g., Worley v. City of New York*, No. 17 CIV. 4337 (LGS), 2020 WL 730326, at *8 (S.D.N.Y. Feb. 12, 2020).  Defendant filed a motion seeking to preclude Dr. Lanier's testimony under Federal Rules of Evidence 702 on the grounds that his testimony is irrelevant and unreliable.  *See* Dkt. No. 148.

Under the Federal Rules of Evidence 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell*

*Dow Pharm., Inc*., 509 U.S. 579, 589 (1993).  This "gatekeeping obligation" applies "to all expert testimony."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  The obligation entails two steps:  first, the Court must determine whether "the proffered expert testimony is relevant, i.e., whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," and second, whether it is "reliable" in that "(1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case."  *Amorgianos v. Amtrak*, 303 F.3d 256, 265-66 (2d Cir. 2002).  In conducting this analysis, courts are to adhere to a "liberal standard of admissibility for expert opinions," *Nimely v. City of New York*, 414 F.3d 381, 395-96 (2d Cir. 2005), and begin with "a presumption that expert evidence is admissible," *Chen-Oster v. Goldman, Sachs & Co*., 114 F. Supp. 3d 110, 115 (S.D.N.Y. 2015) (citing *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir.1995).

The Court determines that Dr. Lanier's testimony should not be excluded under Rule 702. The City produced to Plaintiffs large datasets of computer code containing the requested timekeeping and payroll information.  Dkt. No. 142-15, ¶ 5.  Dr. Lanier used his expertise in labor economics to calculate Plaintiffs' alleged damages based on this information.  *Id.*  This testimony is relevant because it tends to show the extent of damages Plaintiffs allegedly incurred, an element which Plaintiffs must prove as part of their FLSA claims.  *See* 29 U.S.C. § 216 (employers liable for "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."). Moreover, this testimony is helpful to the jury because the average person would not ordinarily be familiar with how to make computations from large datasets of this kind of information.

*United States v. Duncan*, 42 F.3d 97, 102 n.3 (2d Cir. 1994) ("We have generally permitted the elicitation of testimony from expert witnesses that shed light on activities not within the common knowledge of the average juror.").

Defendant's primary argument against the admission of Dr. Lanier's testimony is that he relies on the assumption from Plaintiffs' counsel that Plaintiffs were in fact working during all of the "uncompensated time" logged in the CityTime platform.  Dkt. No. 148 at 3-6.  Reliance on this assumption, however, does not render Dr. Lanier's testimony unreliable nor does it usurp the jury's role of applying the law to facts.  Dr. Lanier is not providing expert testimony as to the factual question of whether Plaintiffs were in fact working during these hours, but to the extent of the damages owed in the event that Plaintiffs prevail on that claim.   Dr. Lanier, as a "damages expert," is "entitled to assume liability for purposes of calculating damages."  *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11-CV-681 KBF, 2015 WL 5459662, at *10 (S.D.N.Y. Sept. 16, 2015).

Thus, to the extent Defendant argues that Dr. Lanier's underlying "assumptions are unfounded," that "goes to the weight of the testimony" and is "a question for the jury in this matter to decide."  *Pharmacy, Inc. v. Am. Pharm. Partners, Inc*., 511 F. Supp. 2d 324, 333 (E.D.N.Y. 2007).   Defendant had the opportunity to cross examine him at his deposition and will be able to do so again at trial.  *See R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010) ("If plaintiff provided its experts with a piece of false information or withheld relevant data, defendants can cross-examine the experts on this matter, calling into question the weight that the jury should accord their testimony.").  If Defendant is still concerned that the jury will be confused as to whether Dr. Lanier is opining on the issue of whether Plaintiffs were working during the "uncompensated" hours, Defendant may request a limiting instruction with

6

respect to his testimony.  *See, e.g., In re Term Commodities Cotton Futures Litig*., No. 12-CV-5126 (ALC), 2020 WL 5849142, at *23 (S.D.N.Y. Sept. 30, 2020) (permitting expert testimony because "[t]o the extent any of [the expert's] statements fall on this line" of legal analysis, "a limiting instruction to the jury may be appropriate to resolve the issue.").

### B.  Motions for Summary Judgment

Plaintiffs and Defendant cross move for summary judgment on Plaintiffs' claims for unpaid overtime (Count I), miscalculation of the regular rate (Count II) and for liquidated damages.  Defendant also moves for summary judgment on Plaintiffs' delayed payment claim (Count III) and Plaintiff moves for summary judgment on its claim for failure to properly calculate compensatory time (Count IV).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp*., 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted).  If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then "there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that he is entitled to relief as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co*., 373 F.3d 241, 244 (2d Cir. 2004).  There is a genuine issue of material fact if a "reasonable jury" could decide in the non-moving party's favor.  *Nabisco, Inc.*

*v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).

To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  In doing so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation."  *Id.* (internal quotation marks and citation omitted).  When there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration*." Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

### 1. Unpaid Overtime Claims

The parties cross move for summary judgment on Plaintiffs claim that Defendant failed to compensate them for overtime hours worked.

Under FLSA, "an employee must be compensated for all hours worked."  29 C.F.R. § 778.223(a).  "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that [(1)] he performed work for which he was not properly compensated, and [(2)] that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)).

### a. There is no genuine dispute that Plaintiffs performed work that was uncompensated

For the first element of their unpaid overtime claim, at the summary judgment stage, "an employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362 (internal quotation marks omitted). The hours that Plaintiffs are on the DHS premises outside of their eight and one-half hour shift, whether they are working during those hours or not, are recorded on CityTime and labeled as "uncompensated hours." Due to the nature of Plaintiffs work, which involves addressing emergency situations like arrests and medical crises, the Court agrees as a matter of "just and reasonable inference" that Plaintiffs were often required to perform work duties outside of their shifts and during their unpaid meal breaks and therefore that much of this "uncompensated time" was spent working. *Kuebel*, 643 F.3d at 362. Plaintiffs testify that they were in fact working during these hours without compensation, as well as many times during their meal breaks. Dkt. No. 164 ¶¶ 37-40, 47. A plaintiff may "show the amount and extent of that work as a matter of just and reasonable inference . . . solely through his own recollection." *Pineda v. Masonry Const., Inc.,* 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011). Defendant does not meaningfully contest that Plaintiffs actually worked unpaid overtime hours in its motion or its opposition to Plaintiffs' motion. There is therefore no genuine dispute of material fact that Plaintiffs worked uncompensated overtime hours.

### b. There is a genuine dispute of material fact as to whether Defendant had knowledge that Plaintiffs were working unpaid overtime

But while there is no genuine dispute that Plaintiffs were working during these "uncompensated hours" and during meal breaks, summary judgment for either party on this

9

claim is nonetheless inappropriate.  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the Court must view all facts in the light most favorable to the non-moving party.  *See Eastman Kodak Co. v. Image Techn. Servs., Inc*., 504 U.S. 451, 456, 469 (1992).  Neither party has met their burden of showing that no dispute of material fact exists as to the second element of whether Defendant had actual or constructive knowledge that such hours went uncompensated.

In order "to establish 'actual or constructive knowledge' of the work performed, Plaintiffs must show that the employer knew or should have known that the work was performed."  *Foster v. City of New York*, No. 14 CIV. 4142 (PGG), 2017 WL 11591568, at *17 (S.D.N.Y. Sept. 30, 2017) (citing *Kuebel*, 643 F.3d at 365).  This is true "even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours."  *Chao v. Gotham Registry, Inc.,* 514 F.3d 280, 288 (2d Cir. 2008).

It is not true, however, where the Defendant reasonably believes that workers *are* in fact being compensated for overtime.  *See Foster*, 2017 WL 11591568, at *22 (granting plaintiffs summary judgment where there was "abundant evidence that City managers and supervisors were aware that Plaintiffs were engaged in *uncompensated* overtime work.") (emphasis added). Though the Second Circuit has never squarely addressed the question, it is incontrovertible that if an employer sets up a sufficient, working system for employees to request and receive overtime pay, and an employee inexplicably declines to utilize that system, the employer should not be expected to have knowledge that the employee is not being paid.  *See Forrester v. Roth's I. G. A. Foodliner, Inc*., 646 F.2d 413, 414-15 (9th Cir. 1981) ("[W]here the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours,

the employer cannot be said to have suffered or permitted the employee to work in violation of s 207(a)."); *White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 876 (6th Cir. 2012) ("When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA.").   To hold otherwise would "essentially be stating that the [employer] did not have the right to require an employee to adhere to its procedures for claiming overtime." *Newton v. City of Henderson,* 47 F.3d 746, 749 (5th Cir. 1995).

In this case, Defendant argues that it had a functioning system for Plaintiffs to request overtime pay.  Dkt. No. 158 at ¶ 68.  As such, Defendant argues it should not be expected to have knowledge of Plaintiffs working unpaid overtime hours before and after shifts and during meal breaks because, even if supervisors saw Plaintiffs working during those times, there was no way for a supervisor or those in charge of time-keeping to know whether that person had not requested or would not request overtime pay.  Dkt. No. 151 at 14.

However, the parties dispute whether Plaintiffs were in fact ordinarily permitted to request non pre-approved overtime pay.  Plaintiffs testify that they were not allowed to submit overtime requests for these hours and that if they did, such requests were denied.  Dkt. No. 164 at ¶ 61-63.  Defendant maintains to the contrary that such requests are "routinely approved" and provides 30(b)(6) testimony in support of that contention.  Dkt. No. 158 at ¶ 68.  Because the parties provide conflicting testimonial evidence, and the Court is to "eschew credibility assessments" at this stage, *Amnesty Am*, 361 F.3d at 122, the Court will not credit either party's version of the facts at this juncture.

Moreover, not only is the issue plainly disputed on the factual record, it is undoubtedly material.  If these requests were regularly approved and Plaintiff had no legitimate basis for

believing they would not be, then Defendant should not be expected to know that Plaintiffs were working unpaid overtime. *See Edwards v. City of New York,* No. 08 CIV. 3134 DLC, 2012 WL 1694608, at *4 (S.D.N.Y. May 15, 2012) ("The plaintiffs were familiar with and utilized the defendant's system for tracking and compensating overtime," therefore that "[s]ome plaintiffs may on occasion have chosen not to submit overtime slips for minutes of overtime worked . . . is insufficient to impute knowledge to the defendant that the plaintiffs were performing uncompensated overtime work."). To the contrary, if Defendant had a policy or practice of denying these requests, then Defendant should have been aware that Plaintiffs would sometimes have to unexpectedly work overtime due to the emergent nature of their responsibilities and that these hours would go unpaid. But because this fact is in dispute, summary judgment cannot be granted for this issue to either party

### 2. Delayed Payment Claims

Defendant moves for summary judgment as to Plaintiff's claim that Defendant failed to provide timely payment for Plaintiffs who worked approved overtime.

The "general rule" under FLSA for the timing of payment "is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends." 29 C.F.R. § 778.106. Moreover, payments "may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." *Id.* The Second Circuit has held that FLSA's "prompt payment requirement is not violated when an employer changes the pay schedule, provided that the change: (a) is made for a legitimate business reason; (b) does not result in an unreasonable delay in payment; (c) is intended to be permanent; and (d) does not have the effect of evading the

FLSA's substantive minimum wage or overtime requirements." *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 58 (2d Cir. 1998).

In Count III of Plaintiffs' Complaint, Plaintiffs allege that Defendant improperly delayed overtime payments by weeks and in some cases months, not because such delays were necessary to calculate overtime pay, but because of "failure by management personnel to approve overtime payments or due to management withholding such payments until the next budgetary quarter." Dkt. No. 1 at 18.  In the Memorandum Opinion & Order on July 25, 2017, the Court dismissed these claims for all Plaintiffs except Plaintiff Campbell, because that was the only Plaintiff for whom the Complaint asserted any factual allegations.  Dkt. No. 37 at 9.  Defendant now moves for summary judgment as to this claim because Plaintiffs provide "no admissible evidence" of any alleged delayed payments and that Plaintiff Campbell has not suffered any monetary damages as a result of delayed payments.  Dkt. No. 151 at 18-19.

Plaintiffs have failed to provide any evidence or make any arguments with regards to their delayed payment claims in either their Rule 56.1 Statement, Summary Judgment Motion, or their opposition to Defendant's motion.  Plaintiff has therefore "abandoned" these claims "by failing to argue that they should survive [Defendant's] motion for summary judgment." *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016).

### 3.  Regular Rate of Pay Claims

The parties cross move for judgment on Plaintiffs' claim that Defendant failed to properly calculate the regular rate of pay in determining overtime payment.   Under FLSA, when an employee works overtime hours, the employer must compensate them at a rate of "not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1). The regular rate of pay includes "all remuneration for employment paid to, or on behalf of, the

employee." *Id.* at § 207(e).  As Defendant does not contest, night shift-differentials (i.e., a

premium rate for working the night shift) and meal allowance payments are "properly included

in the employee's regular rate for the purposes of calculating overtime compensation."  *Lynch v.*

*City of New York*, 291 F. Supp. 3d 537, 547 (S.D.N.Y. 2018); 29 C.F.R. § 778.207(b) (night-shift

differentials included in regular rate).  Plaintiff argues in its motion for summary judgment that

Defendant failed to include both night-shift differentials and meal allowance payments in

calculating overtime pay for Plaintiffs Maniotis and Rosario.

　　　As a preliminary matter, Plaintiffs did not plead in their Complaint that Defendant failed

to include meal allowance payments, and thus they cannot pursue that argument here.  *See Alpha*

*Capital Anstalt v. Oxysure Sys., Inc*., 216 F. Supp. 3d 403, 411 (S.D.N.Y. 2016) ("A court cannot

grant summary judgment regarding a claim if the plaintiffs have failed to plead the claim in the

Complaint.") (brackets and quotations omitted).  Plaintiff did however plausibly allege in its

Complaint that Defendant failed to include night-shift differentials in that calculation.  *See* Dkt.

No. 37 at 8.

　　　The Court concludes that summary judgment for either party on Plaintiff's regular rate of

pay claim is inappropriate.   To be sure, there is no genuine dispute that Defendant failed to

include night-shift differentials in its calculations, as explained below.  However, Plaintiff has

not met its "burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v.*

*1-800 Beargram Co*., 373 F.3d 241, 244 (2d Cir. 2004), as to the *amount* that Defendant

underpaid Plaintiffs in calculating overtime pay.  In support of their motion, Plaintiffs provide

the expert testimony of Dr. Lanier to demonstrate the value of Plaintiffs' regular rate claim.  Dkt.

No. 140 at 19-20.  In his report, Dr. Lanier explains that the regular rate is calculated as "at the

weekly level as all straight pay received—the sum of salary and the recurring differential

payments, plus any non-recurring night differential and/or meal allowance, plus the straight

portions of any overtime pay and the straight value of any comp time awarded—divided by all

hours worked." Dkt. No. 152-51, at ¶ 15.  He explains that he calculated the value of Plaintiffs

regular rate claim by first properly calculating the regular rate, including night-shift differentials

and meal allowances, and then comparing that amount to what Defendant calculated as

Plaintiffs' regular time rate.  *Id*. at ¶¶ 20-21.  Dr. Lanier then immediately jumps to the

conclusion that "[t]he total value of this claim for all eligible plaintiffs in the three-year scenario

is $435." *Id*. at ¶ 22.

This evidence alone is insufficient to demonstrate the value of Plaintiffs' regular rate

claims.  First, as explained above, Plaintiffs cannot receive damages for underpayment due to a

failure to include meal allowance payments.  Second, Dr. Lanier's testimony is insufficient to

preclude a genuine dispute of material fact as to the amount owed due to the failure to include

night-shift differential payments.  If a damages expert explains his "damages calculations, the

facts and assumptions underlying his calculations and . . . the meaning of his calculations," such

testimony "will assist the jury in understanding the evidence." *Syntel Sterling Best Shores*

*Mauritius Ltd. v. TriZetto Grp*., No. 15 CIV. 211 (LGS), 2020 WL 5822058, at *1 (S.D.N.Y.

Sept. 30, 2020).  However, Dr. Lanier declined to provide his calculations, including the inputs

he used, or otherwise explain in any detail how he reached this specific number.  Experts "must

provide some explanation for their conclusions," otherwise the fact finder "cannot assess the

reliability of any conclusion drawn by an expert, even if he possesses relevant experience*."*

*LinkCo, Inc. v. Fujitsu Ltd.,* No. 00 CIV. 7242 (SAS), 2002 WL 1585551, at *4 (S.D.N.Y. July

16, 2002).  While the Court does not doubt that Dr. Lanier has expertise in analyzing these types

of datasets and performing computations therefrom, an expert must "reveal how he has made use

of his extensive qualifications" in order to "establish a basis for his opinion." *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001).   As a reasonable juror could decline to credit Dr. Lanier's conclusory testimony on this issue, summary judgment on the claim is inappropriate. *Sec. & Exch. Comm'n v. Revelation Capital Mgmt.*, Ltd., 215 F. Supp. 3d 267, 277 (S.D.N.Y. 2016) ("If an expert's testimony lies within the range where experts might reasonably differ, the jury, and not the trial court, should decide among the conflicting views of different experts.") (internal quotation marks omitted).

Nonetheless, while the Court will not grant summary judgment for Plaintiff, the Court determines that Plaintiff has demonstrated that no dispute of material fact exists as to the issue of whether Defendant failed to include night-shift differential in its calculation of the regular rate. Under Federal Rules of Civil Procedure Rule 56(g), "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).  *See In re: Residential Capital, LLC,* 533 B.R. 379, 395 (Bankr. S.D.N.Y. 2015) ("The Court may also grant some but not all of the relief requested in a summary judgment motion if it finds disputed issues of fact as to some of the issues presented."); *Pensioenfonds Metaal en Techniek v. Strategic DSRG, LLC*, No. 09 Civ. 5644(RJS), 2011 WL 310327, at *6 (S.D.N.Y. Jan. 24, 2011) (denying parties' motions for summary judgment, but entering order stating that a material fact that was not genuinely in dispute) (citing Fed. R. Civ. P. 56(g))).

Plaintiffs provided testimony of Plaintiffs Maniotis and Rosario explaining that they earned night-shift differential payments but that those payments were not factored into their overtime compensation rate.  Dkt. No. 164 at ¶ 70.  Plaintiffs also provide the 30(b)(6) testimony

of Defendant in which the witness acknowledges that City officials had decided not to include night-shift differentials in the regular rate of pay.  Dkt. No. 142-1, Tr. 175-178.  And Defendant does not meaningfully dispute this allegation.  Defendant argues that it "does include the night-shift differentials when calculating Plaintiffs' rate of pay," and points to the amounts of night-shift differential payments that it paid to the two plaintiffs during the relevant period.  Dkt. No. 167 at 7-8.  As Plaintiff correctly explains in response, the question is not whether Defendant paid night-shift differential payments but whether it included those payments in the regular rate when calculating Plaintiffs' overtime pay – and to that Defendants have no answer other than to baldly assert again that it "include[s] the night-shift differentials."  Dkt. No. 167 at 7.   Such "conclusory allegations," unsupported by any evidence, are insufficient to create a genuine dispute of material fact. *Brown v. Eli Lilly & Co*., 654 F.3d 347, 358 (2d Cir. 2011).

Therefore, the parties may proceed to trial to determine the amount, if any, owed to Defendant for violating the requirement under FLSA that it include night-shift differentials in the regular rate when calculating the overtime pay.

### 4.  Miscalculation of Compensatory Time Claims

Under FLSA, "in lieu of overtime compensation," employees may receive "compensatory time off."  29 U.S.C. § 207(o)(1).  "Compensatory time off" must accrue "at a rate not less than one and one-half hours" for each hour of overtime work.  *Id.*  Defendant does not contest that that under FLSA it is not permitted to provide compensatory time at a "straight time" rate instead of a one and one-half hour rate, and it admits that on occasion it provided compensatory time to Plaintiffs at a straight time rate.  Dkt. No. 163 at 14.  Nonetheless, it argues that "those instances were limited to merely 3 out of 45 times" for Plaintiff Abraham and "1 out of 59 times" for Plaintiff Rosario.  *Id*.

As Defendant admits to providing compensatory hours at a straight time rate, no dispute of material fact exists as to Defendant's liability on this claim. *See Lynch,* 291 F. Supp. 3d at 551 (explaining that even though the Defendant calculated the regular rate of pay correctly "94% of the time," "[t]his is inadequate to evade liability" under FLSA, "as 94% of the time is not 100% of the time."). However, for the same reasons described in II.B.iii of this Opinion, Dr. Lanier's expert testimony is insufficient to preclude a genuine dispute of fact as to the amount Plaintiffs' are owed on this claim. *See* Dkt. No. 152-51, at ¶ 23. Therefore, the Court denies Plaintiff's motion for summary judgment and the parties may proceed to trial to determine the amount owed on this claim.

### 5. Liquidated Damages and Willfulness

FLSA provides that "[a]ny employer who violates [the overtime provisions] shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Liquidated damages are considered to be compensatory, rather than punitive; they are meant to compensate the employee for the delay in wages caused by the FLSA violation." *Lynch*, 291 F. Supp. 3d at 548 (citing *Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 142 (2d Cir. 1999)). A district court has discretion to deny these liquidated damages where "the employer shows that it acted in subjective good faith with objective reasonable grounds for believing that its acts or omissions did not violate FLSA." *Id*. However, "[t]he employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman*, 172 F.3d at 142. "To establish 'good faith,' a defendant must produce plain and substantial evidence of at least an honest

intention to ascertain what the Act requires and to comply with it." *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).

Moreover, when a Defendant's violations are willful, the two-year statute of limitations is extended to three years under FLSA. 29 U.S.C. § 255(a).  "[T]o prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Parada v. Banco Indus. De Venez.*, 753 F.3d 62, 71 (2d Cir. 2014).

Because the Court has declined grant summary judgment on any of Plaintiffs' claims, a determination of whether Defendant willfully committed any violations, or of whether liquidated damages are warranted for such violations, would be premature at this time.  Moreover, the parties dispute key facts in the record that might bear on these issues, such as whether and to what extent Defendant sought the advice of counsel and made other efforts in attempt to comply with its FLSA obligations under FLSA.  *See Howard v. Port Auth. of New York, New Jersey*, 684 F. Supp. 2d 409, 416 (S.D.N.Y. 2010) (denying liquidated damages on summary judgment where "the facts in the record are sufficient to make this a triable issue.").

### C.  Request to Seal

During discovery, the parties entered into a stipulation with regards to Defendant's good faith defense, in which Defendant agreed to a limited waiver of privileged communications for the purposes of providing discovery on that defense. Dkt. No. 71.  At the request of Defendant, Plaintiff agreed to propose that any reference to information produced as part of that agreement in its briefings be redacted on the public docket, with the unredacted copy kept under seal.  Dkt. No. 138.  Defendant requests that this information, to the extent it is referenced in Plaintiffs'

briefings, be maintained under seal because "these documents should be treated as privileged." Dkt. No. 153.

"The common law right of public access to judicial documents is firmly rooted in our nation's history," along with the "First Amendment right to attend judicial proceedings and to access certain judicial documents." *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119-20 (2d Cir. 2006). "Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if" the Court makes "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.* at 124. Indeed, "[t]he need to protect attorney-client privileged communications may defeat the presumption" of public access. *Haider v. Geller & Co. LLC*, 457 F. Supp. 3d 424, 427-28 (S.D.N.Y. 2020). *See also Lugosch*, 435 F.3d at 125 ("[A]ttorney-client privilege might well be such a compelling reason" for permitting sealing.).

However, Plaintiff explains that all the privileged documents referenced in its briefings have been disclosed publicly in other proceedings, either through filing on the public docket or as exhibits in a public jury trial. Dkt. No. 138. Defendant does not contest that these documents have been made public, but rather states that "the City's litigation decisions with respect to each of the" cases where the documents were disclosed "are not binding." Dkt. No. 166.

Rarely, if ever, can the presumption of public access be overcome when the information has already been made public. *See Alcon Vision, LLC v. Lens.com*, No. 18-CV-0407 (NG), 2020 WL 3791865, at *11 (E.D.N.Y. July 7, 2020) (holding that applicant "cannot defeat the already heavy presumption in favor of public access with respect to materials that are already in the public domain.") (quotations omitted); *Cunningham v. Cornell Univ*., No. 16-CV-6525 (PKC), 2019 WL 10892081, at *3 (S.D.N.Y. Sept. 27, 2019) ("Information that is publicly available

need not be sealed."); *Sparman v. Edwards*, 325 F. Supp. 3d 317, 319 (E.D.N.Y. 2018) ("The Court can conceive of no justification to seal an opinion that is readily available in the public domain."); *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 397 (E.D.N.Y. 2013) ("Any countervailing privacy interest of [the party] cannot defeat the strong presumption of public disclosure where the material it seeks to seal is already in the public domain." ). *See also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) (holding that even though it was error for the district court not to seal information, "[w]e simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again.").   Public disclosure also draws the vigor of the attorney-client privilege into question. *See Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*, 171 F. Supp. 3d 136, 140 (S.D.N.Y. 2016) ("As a general matter, a 'party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential.'") (brackets omitted) (quoting *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir.2015)).

Because the information Defendant seeks to redact has already been made public, apparently by Defendant in previous litigation, the presumption of public access to judicial documents is not overcome in this case.

## III.    CONCLUSION

For the reasons stated above, Defendant's motion to preclude Plaintiffs' expert testimony is DENIED.  Defendant's motion for summary judgment as to Plaintiffs' delayed payment claims (Count III) is GRANTED.  Both parties' cross motions for summary judgment as to all other claims are DENIED, though the Court determines pursuant to Fed. R. Civ. P. Rule 56(g) that no genuine dispute exists as to the following material facts:  that Plaintiffs worked

uncompensated overtime hours, that Defendant failed to include night-shift differentials in calculating the regular rate of pay, and that Defendant failed to provide compensatory time at a one and one-half hour rate.  Defendant's request to seal is DENIED.  This resolves Dkt. Nos. 138, 139, 146, 149, 153, 156, and 166.

No later than two weeks from the date of this Opinion, the parties shall submit a joint letter proposing trial dates, starting in September 2021, and a briefing schedule for the pretrial materials described in Rule 6 of the Court's Individual Practices in Civil Cases.  The letter should also include an estimated length of trial and advise whether the parties seek referral to the S.D.N.Y.'s mediation program or to the Magistrate Judge for a settlement conference.

SO ORDERED.

Dated: March 4, 2021
      New York, New York

_____

ALISON J. NATHAN

United States District Judge